Dodd and Others *v.* The State.

*McDonald & Roache,* for the appellees.

---

'Dodd and Others *v.* The State.

Amendments of existing laws can only be effectively made in the manner prescribed in section 21, art. 4, of the Constitution of the State.

Dodd and Others *v*. The State.

The act of *March* 5, 1859, relative to the salaries of public officers, and providing the manner of paying the same, and the manner of reimbursing the State for an increase of salaries, does not operate either to amend or repeal the laws therein referred to.

An official opinion of the Attorney-General of the State can constitute no legal justification of any officer, for any act done in pursuance of it, but such act must be tested by the law.

APPEAL from the *Marion* Common Pleas.

HANNA, J.—This was a suit on the official bond of *Dodd*, Auditor of State.

The breaches alleged were, that he received certain fees, emoluments, perquisites, salaries and gratuities, as such Auditor, which he failed to pay into the State Treasury.

The answer was, that there was no law making it his duty to pay said fees, &c., into the said Treasury.

There was a demurrer sustained to the answer, and overruled to the complaint, each of which rulings, perhaps, fairly presents the question which we are asked to determine, namely, whether the act of *March* 5, 1859, "relative to the salaries of public officers, and providing the manner of paying the same, and the manner of reimbursing the State for an increase of salaries," p. 174, should be so construed as to continue in force then existing laws for the payment of fees, perquisites, &c., to the Auditor, and, at the same time, make it his duty to pay the same, after the reception thereof, into the State Treasury; or whether he could retain the same under said laws.

The first section of said act fixes the salaries of several named officers, the Auditor among others, at a sum greater than they had before that time been paid out of the Treasury.

The second section provides when said salaries shall be paid.

The third section is, "that said officers shall receive no other compensation whatever, but each shall collect and account to the Auditor of State for, and pay into the State

Treasury, every fee, emolument, perquisite, salary and gratuity of every kind that he may receive, or that may arise or accrue in any manner in his official duties, or out of his official business; and each officer is required to keep a strict account of all moneys so received, and pay the same into the Treasury at the end of every three months."

The fourth, fifth, sixth, seventh and eighth sections have reference to the collection of certain docket fees, "for the purpose of reimbursing the State and the several counties against the expenses of the judiciary."

The ninth, and only remaining section, is as follows: " The law heretofore providing for a docket fee in the Common Pleas Court, is hereby repealed; but this act shall not be taken as a repeal of any law providing for the payment of fees, Clerk hire, or salaries paid by other persons or corporations, than the State to State officers, but such fees shall be collected by the respective officers, and paid into the State Treasury as provided by this act."

For the State it is insisted, that the whole spirit of this act shows that it was intended by the framers thereof, to pay the Auditor from the State Treasury a fixed salary, being greater than the amount before that time paid to said officer under the name of a salary; and that to reimburse the State Treasury for such increased expenditure in that behalf, the Auditor should, as theretofore, collect the fees, &c., fixed by previous laws, and before then allowed to him, and pay the same into such Treasury. That the said statute, by implication, repeals the former laws so far as they authorized such officer to receive to his use such fees, &c.; but not so far as he is authorized to charge and collect the same; and enacts that the same shall, when collected, be disposed of as therein provided. That it is not, in that respect, an amendment of the former laws, but a new and substantive enactment made necessary by the implied repeal, by the preceding parts of said act, of

Dodd and Others *v.* The State.

that portion of said several laws authorizing the Auditor to receive such fees, &c., to his own use.

For the appellant it is argued, that whether the third section of said act should, if it stood alone, or in connection with the preceding sections, be viewed as a repeal by implication or not of former statutes, is a question that can not arise, for the reason, that by the ninth section the law makers themselves ignored such construction, or gave a different construction to said third section and said act as a whole. That they thereby, in effect, have declared, that so far as said laws were necessary to the collection of said fees, &c., they should continue in force; but that such parts as enabled said Auditor to retain such fees, &c., for his services, should be amended, so that it should be his duty to pay the same into the State Treasury; and that such part of said statute as thus aims to amend former acts, is void, because it is in conflict with the Constitution. That whatever may have been the intention of the law makers can not be important, if they have failed to manifest the same in the manner pointed out by the Constitution. That they have failed in this instance to do so, because, by the 21st section of article 4, the Constitution says that "no act shall ever be revised or amended by mere reference to its title; but the act revised or section amended shall be set forth and published at full length." No act or section of then existing laws was set forth in the statute under consideration. How shall such statute be construed? As an amendment of laws then in force? or as an independent substantive enactment upon a subject embraced in those laws, and, so far as the same may be in contravention thereof, a repeal by implication of the same? This is the question for us to determine.

It appears to be conceded by the appellant, that the Legislature intended to increase the salary of the auditor, the amount to be paid out of the State Treasury to him, and that to en-

able the State so to do without feeling the increased burden, certain fees, perquisites, &c., that had been before then received by that officer to his use, under various statutes, should still be received by him, but instead of retaining the same to his own use, he should make payment thereof into the State Treasury. This concession is, perhaps, not important, as it is manifest from the act itself that such was the intention.

We think it would be safe, in the examination of this statute, to set out with the conclusion, that it is a sound principle that, if possible, such a construction ought to be given to it, as may best answer the intention which its framers had in view. *Tonnele* v. *Hall*, 4 Coms. 140; *People* v. *Utica Ins. Co.*, 15 J. R. 358.

The intention is conceded and is manifest. If we can say that a certain part of said statute is a substantive independent enactment, that intention can be carried out. If we conclude that it is but an attempted amendment of several former statutes upon the same subject, such intention will be thereby defeated, for however clear the intention of the law makers may have been, it can not have vitality, unless it has been expressed in the manner prescribed in the fundamental law.

The first and second sections, which fix the amount of the salary of the Auditor, and two clerks, the time when, and fund out of which, the same shall be payable, taken together with the first line of the third section, to-wit: "The said officers shall receive no other compensation whatever," if the same stood alone, would, without doubt, operate as a repeal by implication, of all precedent laws in reference to the same subject matter.

This would be the result, because, thus far, the statute is not only irreconcilably inconsistent with, and repugnant to, the statutes before then in force, but also contains negative words upon the right of the Auditor to receive the compensation by said statute allowed to him. Dwarris on Stat. 475,

Dodd and Others *v.* The State.

478, 532; *Brown* v. *County Com.*, 21 Penn.; 37 *id.* 427; Sedgwick on Stat. and Com. Law, 40, 123; *Davies* v. *Fairbaim*, 3 How. U. S. R. 636; *Cone* v. *Kimball*, 21 Pick. 373; *Bartlett* v. *King*, 12 Mass. 537.

This statute was made to change the law, or, so far as we can see, there was no object. Sedg. on Stat., &c., 229. Its effect can not be defeated merely because it is inconsistent with the very laws it was intended to change. *Brown* v. *McMillan*, 7 Mees. & Wels. 196; *Rex* v. *Lumsdaine*, 10 Ad. and Ellis, 160.

Thus far then the way appears clear, for the old laws, under these circumstances, must give place to the later law, without any repealing clause in the latter. Sedg. on Statute, &c., 125.

But the law makers did not stop at the point indicated. In the same section, the third, a duty is prescribed, to-wit, to collect every fee, &c., "that may arise or accrue in any manner in his official duties, or out of his official business," and pay the same into the State Treasury, and that a strict account of all moneys so received shall be kept, and the same paid into the State Treasury at the end of every three months.

By the former part of the law, if standing alone, the sources from which certain fees, &c., flowed into the hands of the Auditor, would have been dried up, by the obliteration of the statutes by virtue of which said fees were formerly collected, from the records of the Legislature, or by said implied repeal, as completely as if they had never passed. Sedgwick 129. As the sources from which fees, &c., were to be collected are not specified, nor the services for which they were to be paid, nor amounts, pointed out other than as arising out of official business, it is exceedingly doubtful whether, if there was no further provision in reference to the same subject, the laws before then in force, authorizing the collection of such fees, &c., could be considered as continued in force; by said third

section. It is true that the reasoning of courts is against the doctrine of the repeal of statutes by implication, if it be possible to reconcile the former and the latter law, so that both may stand. *Bowen* v. *Lease*, 5 Hill 221; *Canal Co.* v. *R. R. Co.*, 4 Gill. & J. 1; *Street* v. *Commonwealth*, 6 W. & S. (Penn) 209 ; *Com.* v. *Easton Bank*, 10 Barr. 442. Perhaps the several statutes that were in force at the time of this enactment, by which individuals and corporations were required, for specified services, to pay to the Auditor fixed amounts, may, under this view of the law of construction, be treated as still in force, so far as to authorize him to collect such sums. But we need not decide the case at bar on that ground, and we therefore pass it over, because, for the reason of this doubt, in reference to the whole section, if for no other reason, it is our duty to take the whole statute together in the examination of the question. *Comm.* v. *Duane*, 1 Binn. 601; *Comm.* v. *Algn*, 7 Cush. 53; 2 Michigan 138. And we may even have reference to the title of the act. *Farman* v. *The City of New York*, 5 Sandf. 16; *King* v. *Cartwright*, 4 T. R. 490; Dwarris 502; Sedgwick 50; *U. S.* v. *Fisher*, 2 Cranch. 386; *same* v. *Palmer*, 3 Wheat.

First, then as to the title, the latter clause of which reads, " and the manner of reimbursing the State for an increase of salaries." If there was no other part of the act providing for the payment of named sums into the treasury but this, there would be considerable light shed upon the interpretation of the third section by this clause of the title, because of the peculiar phraseology of our constitution, in regard to expressing the subject of the act in the title. Art. 4, sec. 19. For said sums of money could not be paid into the treasury unless collected, and then could not be collected, nor demanded, unless authorized by law, and, therefore, the inference might be that laws existing, authorizing such demand, were to continue in force. This inference is somewhat weakened

by the fact that other parts of the act do expressly provide that certain other fees shall be paid into the treasury, "for the purpose of reimbursing the State." Nevertheless, under the circumstances, this title is worthy of consideration in connection with said third section, and the ninth; to the examation of which we now proceed. That part of it applicable to the point now being discussed is this: "but this act shall not be taken as a repeal of any law providing for the payment of fees, &c., paid by other persons or corporations, than the State to State officers."

The law makers appear to have had doubts as to the effect of the former part of the act, and inserted this as a saving or interpretation clause, or something of the kind; and being the last clause upon that subject, in the enactment, it must control, in this instance, where the preceding parts are somewhat doubtful, but without it might, perhaps, be so construed as to operate as a repeal of those statutes giving fees, &c. Sedg. 60, 62. *Wayman* v. *Southard*, 10 Wheat. 1; *Voorhees* v. *Bank U. S.*, 10 Peters 449. But, as a saving clause, it should not, if it can be avoided, be so construed as to destroy the purview of the act and prevent the manifest intention of the Legislature from having force and effect. Sedg. 60; Dwarris 513; *Mitford* v. *Elliott*, 8 Taun. 13. And, as an interpretation clause, it should not be strictly construed, if by such construction the purpose of the statute would be defeated. Sedg. 59; *Rex* v. *Justices, &c.*, 7 Ad. and Ellis, 480. Therefore we conclude that it was intended, and that such is the true construction of said clause, that its office was to save from repeal by implication, such parts of prior laws designated therein as a class, as required the payment to the officers of fixed fees, &c., for named services. The question then fairly arises, whether of the ten or dozen statutes affected by said law, parts can be thus saved from repeal and parts considered as repealed thereby. Those statutes may, for the pur-

poses of this examination, be viewed as of three parts, first, prescribing the duties of the officer; second, fixing and authorizing the collection of certain sums therefor; third, authorizing the retention thereof by said officer as a compensation for the performance of said services. It was the evident intention, and we have concluded that it was properly made manifest, that the first and second parts of said statutes should continue in force. The next question is, whether the third part is also continued, or whether it is repealed. It will be borne in mind that the duties of the officer are not fixed in one statute, the fees in another, and the right to retain them to his own use by the officer in still another, but that these several subjects are in nearly every instance included together in each statute assigning new duties to the officer; as for example, in reference to the *Wabash* and *Erie* Canal lands and funds, the saline fund, the swamp lands and funds arising therefrom, the University funds, &c., &c. These duties, &c., were imposed at various times, in some instances several years intervening. The several statutes thus affected by this legislation are not enumerated or named, and are only referred to as a class for the purpose of being saved from repeal by implication. By that saving clause it was not proposed that *parts* of said acts should be so saved from annihilation by this statute; but that a construction shall not be placed upon the same whereby it shall " be taken as a repeal of *any law* providing for the payment of fees," &c. Now the trouble is, that by attempting, through abundant caution, to save two constituent parts of said laws from repeal, the Legislature has, by the language employed, saved all three of the parts of said laws. In other words, so expressly guarded against repeal by implication as to leave no room for interpretation. It follows that if the whole of the former enactments prescribing the duties and compensation by fees, &c., of the au-

Dodd and Others *v.* The State.

ditor are thus saved from repeal, that he had the right to collect said fees, &c.

·The question then presents itself, Does this statute legally provide for the disposition of said fees, &c., after being collected ?

The prior statutes, being thus continued in force, we can not view this as a substantive independent enactment in reference to a part of the subject matter of such laws; because it is not within itself sufficiently certain, as to the services which are to be rendered, and fees, &c., paid therefor.

As any conclusion is thus ignored, that might otherwise have been drawn, as to a repeal of those prior laws, the result appears to be that the only object, in that respect, there was in view, was the amendment of said laws in reference to the final destination of said fees. Twice, in the third section, said destination is named, and the clause, immediately following the one above quoted, indeed a part of the same sentence, is as follows: " but such fees shall be collected by the respective officers, and paid into the State Treasury as provided by this act." This is, as mentioned in the third section, such payment should be at the end of every three months. We can not view this as any thing other than an attempt to change the law as to the ultimate destination of said fees, &c., after they were collected by the officers.

In the connection in which this attempted change, by legislation, here occurs, it can not be regarded in any other light than as an effort to amend the several parts of the various statutes, so referred to as a class, so far as the same permitted the officer to appropriate said fees, &c., to his private purposes. This would perhaps all be well enough, and have accomplished the end aimed at, if the constitutional provision did not stand in the way, in reference to the mode which must be pursued in making amendments to existing statutes. As that was not followed by setting forth the sections

amended, so much of said statute as attempts to direct the payment of said sums into the State Treasury is inoperative.

The next point arising in the record is on the ruling on the demurrer to the second paragraph of the answer. That set up, as a justification of the act of the Auditor in receiving and retaining certain of the fees, the written opinion of the Attorney General of the State.

The sixth section of the act, creating the said offices, is as follows: "Whenever required so to do, by any officer of State, such Attorney General shall furnish the applicant a written opinion touching any point of law concerning the official duties of such officer, and to either branch of the General Assembly, when requested so to do by a resolution thereof, asking an opinion concerning the validity of an existing or proposed law, or proposed law, or conflicts thereof."

It is insisted that when an officer of State, in pursuance of this statute, calls upon, and obtains from, the law officer of the State, a legal opinion in reference to his duties, and proceeds in accordance with the same, that a suit will not lie upon his official bond, whether said opinion is sound law or not. And the question is asked, if this is not so, then what use is there in requiring the opinion?

There are several reasons why this position is not tenable. First, if the opinion can shield the officer from a civil suit, when he does wrong, then it ought to be binding upon him; and of course, as it is expressed in as strong language, when called for, binding upon the Legislature. The Auditor audits money accounts before the applicant can receive the same from the treasury. Suppose under a mistaken view of the law, based upon an erroneous opinion, he should refuse to allow a just account to a private citizen. Would that opinion be a bar to proceedings to obtain the amount so due? Would an unconstitutional law be held binding because an opinion had been given to the Legislature in advance that it was

valid? The position is so plainly untenable that it is useless to pursue the subject.

As to the question propounded. The opinion is for the information of the officer. He can follow it or not.

*Per Curiam.*—The judgment is reversed, with costs. Cause remanded.

*McDonald & Roache,* and *Newcomb & Tarkington,* for the appellants.

*James G. Jones,* Attorney General, for the State.