## EMPLOYEE AT YEARLY SALARY NOT ENTITLED TO OVER-TIME.

Circuit Court of Cuyahoga County.

THOMAS W. DAVIS v. R. S. HUBBARD, TREASURER OF CUYAHOGA COUNTY, ET AL.

Decided, March 17, 1899.

*Master and Servant—No Extra Compensation Recoverable Where Employment is at Yearly Salary.*

In the absence of any express provision in the contract of employment, an employee, who is employed in a certain capacity at a yearly salary, can not maintain an action to recover extra compensation for time spent in excess of eight hours per day.

CALDWELL, J.; HALE, J., and MARVIN J., concur.

Thomas W. Davis brought this action in the court below to recover for over-work under a contract.

An answer was filed denying any indebtedness, and a reply was filed to that.

When the case came before the court below, an objection was made to any testimony under the pleadings, based on the ground that there was no cause of action set out in the petition. The court sustained that demurrer to evidence, and a verdict was rendered by direction of the court for the defendant, Hubbard, and a judgment entered therein dismissing the petition. The action was first brought against R. S. Hubbard individually, and against R. S. Hubbard, treasurer of Cuyahoga county, and a demurrer was filed to that petition which was sustained, but no final judgment entered, and the plaintiff below, Davis, took leave to amend the petition and put it in the shape in which it was at the time the case was finally disposed of in the lower court.

The first part of the petition presents one question involved here, and the latter part another, and although they might be considered together, I will consider them separately.

This is plaintiff's amended petition:

"Now comes the plaintiff and by leave of court first obtained files this, his amended petition herein, and for his cause of action he says:

"The defendant, R. S. Hubbard, is the duly qualified and acting treasurer of the county of Cuyahoga in the state of Ohio, and on the first day of September, 1894, plaintiff entered into a contract with said defendant, by the terms of which contract the plaintiff promised and agreed to enter the employ of said defendant in the capacity of a deputy in the office of said county treasurer of said county and to perform the duties of said deputy, in consideration of which agreement said defendant, as treasurer of said county, promised and agreed to pay to plaintiff for said services as deputy at the rate of one thousand dollars per annum, payable semi-monthly; that said agreement was thereafter modified and made definite in this, to-wit: The said plaintiff and defendant agreed that eight hours per day should constitute a day's work of said plaintiff; that under said agreement as so modified and made certain, the plaintiff entered said employment as deputy county treasurer and continued in said occupation and employment up to and until the 31st day of January, 1896, on which day plaintiff was discharged from said employment by said defendant."

The petition sets out the amount of labor he (Davis) performed during the time he was acting in the capacity of deputy treasurer, to the amount sued for in this petition, at fifty cents an hour, as over-work, in excess of the eight hours per day. Now he says this was only done to make the agreement more specific, that eight hours should be a day's work; that that was the only object and purpose, and that for any work over-time he was to be paid extra.

If the original contract meant eight hours should be a day's work, then the additional contract made did not alter the original contract in that respect; eight hours still constituted the day's work. But if the contract meant as here set out—the substance of it, and that is all we have—if the contract read that he was to perform such ordinary labor or ordinary day's employment as the duties of the office called for and as was customary in the office, if the contract meant that, then the alteration, whatever the eight hours meant, was without any consideration whatever and would be of no binding force. It

would simply be agreeing, after a contract was made, to pay a party more than he was to receive by the contract, without any extra consideration, and it would have no binding effect upon the party so agreeing. So that the original contract not being in force as to its terms, we can only take the contract as being what contracts of this nature generally mean.

It would be a strange doctrine to most of the merchants of this city where they employ a man to work in a store on a salary of a thousand dollars a year, if that man was only to work eight hours a day and when he worked eight hours each day for a year, he had fully performed his contract, although it was the custom in that store to open very early in the morning and keep open until very late in the evening, or until nine or ten o'clock at night.

And so we might follow this in any department of the business of life where men are employed by the year. It would be introducing into that kind of contract an element that the public has not dreamed of. And to hold now under any law that exists in this state that eight hours a day applies to a contract of this character, would be going beyond anything that the law would warrant, and would simply be revolutionizing the understanding that is entered into by both employer and employee under contracts of this character, and that would not do. Instead of the courts becoming arbitrators of principles of law to make persons more safe and to secure men in their property and in their rights, it would be making the courts mere machines to overthrow all the safety in contracts that parties have.

Now, so far then as we have any knowledge concerning this contract of the hiring by the year at a thousand dollars, it means that he was to devote such time to the work of the office of the treasurer of the county as men generally do who work in that capacity in receiving taxes and working upon the books; and we all know that that varies; there are seasons when people are not paying taxes that a day's work may be short, and there are other seasons when the day's work is necessarily long; and I notice that for all extra hours charged here, he has charged for days longer than eight hours, and this being true, under any fair

construction of the contract as entered into, it clearly appears
that the new contract was one without any consideration so far
as the treasurer, Hubbard, is personally concerned; hence of
no binding effect whatever.

This might be sufficient, but further on the plaintiff says, that
said R. S. Hubbard, as county treasurer as aforesaid, did not, at
the time said extra labor was performed, nor at any time within
the period of said employment or theretofore, agree with the
county commissioners of said county of Cuyahoga as to the com-
pensation which this plaintiff was to receive for said extra labor,
nor was said defendant authorized by said county commissioners
of Cuyahoga county to employ this plaintiff at said extra labor
at a stipulated sum per day in accordance with the statute in
such case made and provided.

Wherefore, he concludes that the said R. S. Hubbard per-
sonally is liable for this extra labor. In other words, he says
that there is a statute in this state and that under it Hubbard
can employ help in the office of county treasurer only in accord-
ance with that statute and, not having the authority required
from the county commissioners to do what he undertook to do,
he therefore could not bind the county and hence did bind him-
self personally.

I have examined this question because it is new, with some con-
siderable care, and I find this to be the rule in regard to public
officers, and it varies somewhat from that of an agent.

It is frequently said in works on agency, that if the agent does
not bind his principal because he has gone beyond the authority
given him, then he binds himself; and, with some exceptions,
that is quite a general rule. Now that is not the rule in regard
to public offices. A public officer may not bind himself and yet
he may not bind the principal. The party may be without any
remedy either as to the public officer or corporation—the mu-
nicipal corporation if it be such—or the government, or what-
ever corporation of which he may be acting as a public officer.
But I find this to be laid down as the rule governing public
officers, that the party can recover from the officer only where
he has acted without authority from his principal and has used

apt words to bind himself.  Before he can be held liable, he must have acted entirely without authority to act, and he must then have used apt words to bind himself.

I have examined all the cases that were cited to show that Mr. Hubbard is liable under this petition, and I find, in every case cited, that they find that the officers acted clearly without any authority, and without any contract and they used apt words to bind themselves.  *This* contract is entirely wanting in showing that Hubbard used any apt words to bind himself.  No language is set forth, nothing definite is set forth to determine that matter at all—a mere conclusion and nothing else—and that is not set forth as a conclusion from the words used, but as a conclusion of law.  So that, in this case it would be impossible to hold Mr. Hubbard until it is shown, first, that he acted without authority, and second, that he used apt words in the contract he made, to bind himself; and, even then, there are exceptions to that rule, and one is this:  If the officer act under a public statute that limits his authority and shows just how far he may go, then the party who acts, who deals with him, deals with knowledge of his authority and he knows that he has no authority to make such contract, because what is known publicly is known by all men, and a public statute and any action that officers may take under it, that is, of a public nature, is known by everybody.  And that being true and the contract having no apt words, even if he has exceeded the authority of the statute and acted contrary to it without authority to act under it, he still is not liable.

This is held in 18 Ind., 66; 4 Minn., 126; and in a number of other cases cited.

It is held that the party dealing with the officer in such case is presumed to know his authority:   16 Fed. Rep., 688; 42 Ind., 106; 12 Iowa, 142; 18 Md., 276; 52 Mo., 578; 7 Wallace, 606; and I have seen many other cases on this subject.

There are cases holding that where, as in this case, the party is bound to know the authority of the officer and deals with him about matters that concern the government, such dealings are against public policy; that it is against public policy to have an officer dealing with matters pertaining to government where

he has no authority to, and the party thus dealing with him can not justify his acts even on a personal basis and, in order to escape liability himself, it is not necessary, that he should create a liability against his principal, against the corporation. That is held in a number of cases:   22 Conn., 371; 29 Cal., —; 21 Wis., 199; 42 Ind., 106.

This being the law of the case as I find it laid down without exception, it appears conclusively, beyond all possibility to contradict it, that Hubbard in this case did not make himself liable on this contract, even though he made it, and even if it had a sufficient consideration to sustain it, which it did not have, as I have stated.

The judgment of the court below is affirmed.