JOHN SANBORN, Appellant, *vs.* WILLIAM NEAL, WILLIAM B. SANBORN, and JOHN BAILOR, Respondents.

#### APPEAL FROM THE DISTRICT COURT OF RICE COUNTY.

Where a person contracts for another without authority, or exceeds the scope of his authority, he is held personally responsible; but when *public agents* in good faith contract with parties having full knowledge of the extent of their authority, or who have equal means of knowledge with themselves, they do not become individually liable, unless the intent to incur a personal responsibility is clearly expressed: although it should be found that, through ignorance of the law, they may have exceeded their authority.

When a person, known to be a public officer, contracts with reference to the public matters committed to his charge, he is presumed to act in his official capacity only, although the contract may not in terms allude to the character in which he acts—unless the officer, by unmistakable language, assumes a personal liability, or is guilty of fraud or misrepresentation.

When the terms of a contract are such as to render it doubtful in what capacity the parties act, their intention at the time of executing it furnishes the criterion by which their liability will be determined.

The cause of action is founded upon a promissory note, (copied in the opinion of the Court,) upon which the makers were sought to be held individually responsible.

The record presents a mass of evidence tending to show the intention of the makers to contract in an official capacity, and to carry notice thereof to the Plaintiff.

Verdict for the Defendants, and motion for a new trial overruled. Plaintiff appealed.

Points and authorities of Appellant.

*First.*—The note and mortgage constitute one contract, the Defendant's contract in writing to pay to this Plaintiff or his order the money specified therein, with the interest at the time and on the terms thereof.

1. The note in suit then is, by its own terms and legal import, the written contract and promise of these Defendants, and as such they are liable thereon to the Plaintiff in this action. There is no ambiguity of language employed, and surely parties had a right to choose the language they preferred in making their contracts, and having done so the courts will leave them to abide the legal construction and interpretation of the same when made. 11 *Mass. Rep.*, 27;

2 *Metcalf R.*, 47; 5 *Selden Rep.*, 571; 9 *Johns. Rep.*, 334; 8 *Cowan Rep.*, 33; 16 *Pickering Rep.*, 347; 14 *Maine Rep.*, 180; *Ibid*, 235; 10 *Wendall Rep.*, 88; 7 *Cowan Rep.*, 453; 3 *Wendall Rep.*, 95; 12 *Mass. Rep.*, 173; 9 *N. Hamp. Rep.*, 263; 7 *Wend. Rep.*, 68; 11 *Mass. Rep.*, 54.

2. The expression "*as Trustees of School District No. 10*," in the body of the note and deed is mere *descriptio personarum*, and is quite insufficient to change the Defendant's personal contract into a contract of the district, and to exonerate them by charging the district thereon. 8 *Cowan Rep.*, 33; 4 *Comstock Rep.*, 208; 9 *Johns. Rep.*, 334; 2 *Wheaton* 45; *Edwards on Bills, pp.* 80–83, *and notes and cases there cited.* Most of the cases first above cited are authorities also on this point. 8 *Mass. Rep.*, 103.

3. The terms of the written contract being clear and explicit, and the Defendants having signed the same as the contracting parties, the legal effect of the instrument should have been ascertained and determined by the *Court*, as matter of legal interpretation and construction of the terms and language which the parties themselves have chosen to adopt as the written evidence of their contract, and the Judge below manifestly erred in holding otherwise, and in declining to give the first requested instruction, and also in the charge to the jury in this behalf. 2 *Parson's on Con. Ch.* 1, *sec.* 1, 2, *p.* 1 *to* 9 *inclusive, and notes · and cases cited in the notes;* 5 *Seld. Rep.* 571, *and the authorities cited in the opinion of the Court;* 4 *Comstock Rep.* 208; 1 *Parson's on Contract,* ("*Liability of Agents,*") *p.* 54, *note A, and cases, English and American, cited in the note*:

*Second.*—This promissory note then being, by its terms and legal import, the promise and contract of these Defendants, whereon they *alone* are liable as the contracting party, it is not competent for them to shift that liability, and exonerate themselves by parol evidence, tending to show that they intended to charge the District, and that they and the Plaintiff so understood it when the note was made.

1. The law places more reliance upon *written* than on oral testimony, and it is an inflexible rule that parol evidence is not admissible to supply or contradict, enlarge or vary, the

words of a contract in *writing*. That would be the substitution of parol to *written* evidence, under the hand of the party —it would be displacing the language which the parties had agreed should be the abiding evidence of their contract by resort to "*slippery memory*," and the uncertain and often treacherous recollection of interested witnesses, and would lead, if adopted, to uncertainty, error, and fraud.

2. Hence the *intention* of the parties at the *time* the contract was executed, is the object sought, and that must be ascertained by the *terms which the parties have chosen to reduce to writing as expressive of their intention,* so that it has come to be universally true, as a legal proposition, that where a contract is reduced to. *writing*, all colloquium between the parties, all matter of negotiation and discussion on the subject antecedent to, at the time, and *dehors* the written "*declarations and understandings*" are excluded as merged in the written instrument. 2 *Kent's Com.*, 8*th ed.*, *p.* 731–2; 1 *Greenleaf's Evi.*, 275–277, *and the rule applies to all written contracts, whether unsealed or specialities;* 11 *Mass. Reports* 27 *and* 31, 1 *Johnsons Reports.*, 467; 11 *Shepley* (*Maine*) *Reports*; 566; 7 *Ves. Rep.*, 218; 7 *Mass. Rep.*, 522; 1 *Amer. Leading Cases, notes, p.* 628–9; 8 *Peter's Rep.*, 165; (11 *Curtis' Rep.*, 58;)1 *Parson's Cont. Ch.* 3, *s.* 7 *p.* 54, *note A, and authorities cited in the note, English and American; Byles on Bills, p.* 27, *in margin, top page* 938, *and notes;* 2 *Kernan N. Y. Rep., p.* 565–6.

3. There is a class of cases, we admit, which are often cited by the Reporter's Syllabus as enunciating a different doctrine, to the effect that the intention of the parties may be proved by parol evidence outside of the written contract, and, if need be, variant, contradictory, and explanatory of the same, by showing that the intention and understanding was to bind a third party or corporation as principal, and not the Defendants, and that therefore the contracting party in all such cases should be treated as agent only in whatever form or in whatever capacity he may on paper have executed the contract.

As belonging to. this class of cases, here referred to, may be mentioned—21 *Conn. Rep.*, 626; 17 *Wend. Rep.*, 40; 3

*Hill Rep.*, 493; 4 *Barb. Rep.*, 274; 22 *Pick. Rep.*, 158; 11 *Mass. Rep.* 97; 1 *Cowan Rep.*, 513; 5 *Wheaton*, 326; 4 *Curtis Rep.*, 648; 9 *Mass. Rep.*, 335; 7 *Cushing (Mass.) Rep.*, 371.

These cases are now to be examined, and it will be seen that they are dissimilar in some essential points, and that they generally disclose in the *face of the written contract* the principal as the contracting party, and that the persons signing the same had attached to their signatures their representative character as *"Agents," "Attorney," " Committee," " Treasurer,"* or *" Trustees,"* and being thus written and executed the parol evidence was received not to contradict, vary or explain the instrument, but in fact in *aid* of the same, by showing that it was competent for the principal to make such contracts himself, and that he had conferred the necessary authority upon the agent, and that his agent had acted within the scope of the delegated authority. To that extent there is no objection to the authority of those cases, and surely they are no infraction of the doctrine we invoke on this branch of the case.

4. It was error therefore in the court below to hold as the Judge at the trial did, that the note in suit contains sufficient on the face of it to authorize the introduction of parol evidence, and in denying the Plaintiff's *second* request for proper instructions to the jury on this point.

5. But if parol evidence in the case at bar be admitted at all, surely the *declarations* of either or both the parties to the note and mortgage made at the *time,* or *before,* or *subsequent* to the execution of those instruments, should not have been received to exonerate the Defendants by changing the legal effect of the executed instruments. 1 *Greenleaf's Ev. 9th Ed., Secs.* 275–278 *inclusive, and notes and cases cited in notes. "Declarations and understandings"* were improperly received. This review disposes of the first and second questions presented by the record.

*Third.*—The fourth, fifth and sixth requested instructions in behalf of the Plaintiff should have been given.

The Defendants as trustees had no authority to make this *note and mortgage,* and are therefore liable to the Plaintiff on their written *promise* to pay him the amount of money with the rate of interest, and at the time stipulated therein.

1. Were it competent for School Districts to hire money, make notes and mortgages, the defence here would be still incomplete in as much as the case at bar fails to find that this District had delegated such power to the Defendants or ratified the acts done by agreeing in some legal manner to perform the contract so made. 21 *Pick.* 275 ; 10 *Metcalf* 161–8 ; 8 *Wendall R.* 494.

2. School Districts are municipal corporations created by Statute with limited specified powers, being such only as the Legislature may from time to time clothe them with, and are to be found only in the Statute.

3. The powers of School Districts in this State at the time this contract was made, are all given and enumerated in the *Collated Statutes, pp.* 358–9, *ch.* 23, *title* "*Common School,*" *Secs.* 64 *and* 67 *inclusive.*

The power to hire money, give notes and mortgages, is not among the enumerated powers. *Angel and Ames on Corporations, pp.* 334–6–7.

4. The *Trustees* of School Districts, like the Districts they represent, derive all their powers from the Statute. The same Statute and same chapter (*Secs.* 70 *and* 78 *inclusive*), confers and defines their powers and duties, and it is no where made their power and duty to hire money, make promissory notes and mortgages, so neither the District nor Trustees had the necessary power to make this contract or to ratify it when made. 13 *Wendell* 28, *Brewster vs. Caldwell, has no application ;* 21 *Pick.* 270, *Hayward vs. Pilgrim Society is not opposed.*

5. It is a sound general proposition well recognized in the books that where one acting for others or corporations as his principal has acted without authority, or transgressed his legal authority, he shall be held liable to the other contracting party, *and that irrespective* of the form of the contract or the manner of its execution. *Edwards on Bills,* 90, *and notes and cases cited in notes; Amer. Leading Cases; Hare and Wallace's notes p.* 638 *and notes ;* 7 *Cowan Rep.* 453, *Stone vs. Wood, and cases cited in the opinion;* 2 *Johns. Rep.* 48.

This proves and settles the liability of these Defendants, unless they enjoy some immunities peculiar to them as "*Trus-*

*tees*." of a School District, and that subject is now to be examined.

6. To this rule of law there is a qualified exception in favor of "*Public Agents*" acting for the Government, and in its behalf within the scope of their general powers, but where, by some unknown defect in the law under which they acted they have failed to bind their principals. In such cases they are not to be held personally liable simply and solely because they thus failed to bind their principals, but they may, nevertheless, be liable on other grounds.

Such is the doctrine deducible, we think, from the best considered cases. 3 *Dallas Rep.* 384, (1 *Curtis* 267); 1 *Cranch. Rep.* 424, (1 *Curtis* 423); 12 *Johnson Rep.* 444; *Ibid* 385; 23 *Pick. Rep.* 120.

7. Our School Districts in this State being *quasi* corporations only with limited powers co-extensive with the duties imposed by Statute, the *Trustees* of the same are not "*Public Agents*" in the fullest acceptation of the term, but like Clerks of School Districts, Overseers of the Poor, Town Supervisors, Fence Viewers and Path Masters, they are *municipal officers* acting in the capacity of special agents, being invested with certain corporate powers *sub modo* and for specified purposes only, and they are not known to be entitled to any special immunities whereby they are at liberty to ignore their legal contracts. 2 *Bouvier's Law Dictionary* 318, *cases there cited*.

8. The rule most consistent with the rights of parties, and nearest in harmony with the analogies of the law, would seem to be this, that in the case of Public Agents acting in a known public capacity, the *presumption* in the first instance should be that they *intended* to bind their principals and not themselves, but like other men they are responsible on their personal contracts, and if, in turning to their *written contract*, it is apparent by the terms they have chosen to adopt as the evidence of the same that they have made themselves responsible they will be adjudged liable thereon, both because they had transcended their delegated authority, and because they have made themselves the contracting and promising party as would these Defendants in the case here were it even conceded, which it is not, that they being Trustees of a School District were there-

fore "*Public* Agents" in the sense of the adjudged cases.  15 *Johnson's Rep.* 1; 12 *Wend.* 179, *Osborne vs. Kerr, not necessarily hostile to this doctrine;* 14 *Conn. Rep.* 250-2; 18 *Conn. Rep.* 7; *See Summer vs. Heard before cited;* 9 *Metcalf Rep.* 63; 10 *Metcalf Rep.* 454; 6 *Mass. Rep.* 58; 23 *Pick. Rep.* 120.

There are reported cases such as, 22 *Conn. Rep.* 385; *Ibid* 557; 10 *Conn. Rep.* 329; 3 *Conn.* 560, wherein a local doctrine would at first view seem to have been inaugurated in language broad enough to suggest the instructions requested by Defendants and given by the presiding Judge, but when the opinions there pronounced are examined with reference to the peculiar state of facts attending those cases, and in the light of adjudications at least of equal authority, it will be seen that while those several cases were rightly disposed of, the *language* of those cases is *obiter dictum* merely, and so not to be received as overruling the general doctrine for which we contend as directly applicable here as being clearly deducible from the weight of both English and American authority.

9. The doctrine stated in our last subdivision does not depend on the question whether the parties had equal means of knowing the law, or whether the one or the other recommended the business to be transacted in that peculiar mode, or whether one or both misconceived the legal effect of the contract. *Cases cited in note (Y), on page* 270-1-2 *Parson's Contract,* 3d *Ed.*

10. It follows then if these points are well taken, that the instructions requested on behalf of Defendants, and given by the Judge in his charge to the jury, were unauthorized by the facts and the law of the case, and that they were from the terms chosen and employed, suited to mislead the jury, that the charge as a whole was erroneous and necessarily induced a wrong verdict, that the Defendants have made themselves the contracting and promising party, and by the terms and legal import of their written contract, they are liable to the Plaintiff in this action, and so the verdict should be set aside and the case sent to a new trial.

Points and authorities of Respondent.

*First.*—The rule that an attorney or agent must sign the name of the principal, applies only to contracts under seal.

With reference to simple contracts, and especially commercial paper, a much more liberal rule prevails. If it can from the whole instrument be collected that the true object and intent of it is to bind the principal and not the agent, courts of justice will adopt that construction, however informally it may be expressed. *Story on Agency*, Sec. 154–277 ; 9 *Mass.* 334 ; 8 *Pick.* 56 ; 1 *Cowen* 513 ; 10 *Wend.* 271 ; 8 *Muson & Welsby*, 834 *and* 44 ; 4 *Barb. S. C. R.* 274 ; 2 *Conn.* 435 ; 11 *Sergt. and Rawle*, 129 ; 1 *Cranch*, 345 ; 11 *Mass.* 291 ; 1 *Parson's Contracts*, 48–9 ; 6 *Conn.* 464 ; 21 *Conn.* 626 ; 12 *Mass.* 237 ; *Byles on Bills* 27, note 1.

Many of the cases cited by the Appellant on this branch of the case, are cases in which the name of the principal nowhere appears upon the face of the instrument ; others are cases of sealed instruments, and in others the agent was held because he showed no authority to bind his principal.

2*d.*—The words "as Trustees of School District No. 10," are not merely *descriptio personarum*. The Trustees expressly declare not that they are Trustees, which might admit of such a construction, but that they sign as Trustees.

3*d.*—Where anything appears upon the face of the instrument, raising a doubt as to the character in which the party signs, and the name of the principal was disclosed, and the payee knew that the party signed simply as agent, with no intent to incur personal liability, the agent will not be bound, and adding the words " as Trustees," is notice that the agent does not intend to assume such liability. *See* 9 *Barb. S. C. R.* 528, in which many cases cited by the Appellant are reviewed. 1 *Cowen*, 513 *or page* 535.

*Second.*—It is the constant practice to show by parol evidence the character in which a party signs commercial paper, and where this evidence is introduced in aid of and not to vary or control the terms of the instrument, we are aware of no instance in which it has been rejected.

It is not in this case offered to vary or control the terms of the note, but to prove a fact, namely : Plaintiff's knowledge of the character in which the Defendants acted.

2*d.*—In cases of agency it is admissible to show knowledge of the agency on the part of the payee, and to ascertain for

17

whose indebtedness the note was executed, and to whom the credit was actually given.  *Edwards on Bills*, 80 ; *Angel & Ames on Cor.*, *Sec.* 294.

*3d.*—In cases of ambiguity in commercial paper, where the words are equivocal, but admit of precise and definite application by resort to the circumstances under which the instrument was executed, this evidence is admissible.  9 *Barb.* 528.

*4th.*—In these cases it is competent to prove facts and circumstances respecting the relations of the parties, the value, quality and condition of the property with respect to which the contract is made, and the acts and declarations of the parties showing their understanding of it, with a view to ascertain to whom the credit was given, and if from such evidence, in *connection with the writing*, it appears that credit was given to the principal, and that no intent existed that the agent should assume a personal responsibility, he will not be bouud. 21 *Conn.* 626 ; 2 *Cush.* 271 ; 2 *Minn.* 144 ; 2 *Philips on Eq.*, *3d Ed. p.* 363, *note* 1 ; 5 *Wheaton*, 326 ; 17 *Wend.* 40 ; 3 *Hill*, 493 ; 4 *Barb.* 274 ; 23 *Pick.* 120 ; 22 *Pick.* 158 ; 16 *Pick.* 347; *Angel & Ames on Cor.* 293, *Sec. and cases cited.*   9 *Wit.* 511–547 ; 7 *Cush.* 404.

*5th.*—If this position be correct it follows that the Judge committed no error in holding that the intent of the parties was to be determined by the jury, and in declining to give the first instruction requested by the Plaintiff.

*Third.*—If an agent sign a note for his principal without authority, and the principal with full knowledge of the transaction ratifies it, he will be liable, and the agent will be subject to the same duties and responsibilities only, as if he originally acted within the scope of his authority.  *Story on Agency*, *Sec.* 244, *p.* 308–9, *4th Ed.*

*2d.*—If the debt was incurred for the benefit of the district, and the money went to their use, they knowing the circumstances, this amounts to a ratification of the acts of the Trustees, and renders the district liable.   1 *Pick.* 271; 21 *Pick.* 270 ; 21 *Conn.* 626.

*3d.*—An agent may execute a promissory note for a credit obtained within the scope of his authority, without being ex-

pressly authorized by his principal.   A power to hire money implies the power to execute the usual and necessary contracts. *See cases cited to last point.*

*4th.*—Were there no proof of express authority to hire money, and of ratification of the contract by the district, yet by virtue of their authority to build, hire or purchase a school house, and their general supervision over the property and finances of the district, (*See Sec.* 12, *p.* 360, *Comp. Stat.*) the Trustees have power to bind the district by the note in suit, the district not having provided them with money.   2 *N. H.* 251 ; 10 *Met.* 454 ; 15 *Pick.* 38 ; 21 *Pick.* 620, 270.

*Fourth.*—Quasi corporations possess not only the powers conferred by statute, but all others necessary and incidental to the exercise and enjoyment of those conferred.   *Edwards on Bills*, 348 ; *Angel & Ames on Corporations*, *Sec.* 24.

*2d.*—In the absence of any prohibitory statute they may give a promissory note for a debt contracted within the scope of their business, and in the prosecution of the object for which they were created, though not specially authorized to do so by statute.   Acting within the legitimate scope of their business, they may make any contract not prohibited by law.   *Edwards on Bills, p.* 76 *and* 348–9 ; 1 *Pick.* 371–3 ; 21 *Conn.* 627 ; 7 *N. H.* 298 ; 30 *Maine, Shepley*, 17, 452 ; 2 *Cush.* 426 ; 1 *Cowen* 513 ; 3 *Wend.* 94 ; 10 *Mil.* 454 ; 5 *Barb. S. C. R.* 218 ; 2 *Hill*, 265 ; 4 *Hill*, 263.

*Fifth.*—The Trustees of school districts are public agents. 15 *Pick.* 35 ; 3 *Conn.* 564, 10 *id.* 338, 14 *id.* 248, 21 *id.* 627 ; 22 *Conn.* 379 ; 18 *John.* 124, and as such agents are not personally liable on notes or even sealed instruments made pursuant to their legal authority, *although* made in their own names, and although they fail to bind their principal.   3 *Conn.* 560 ; 8 *Cowen*, 191 ; *Story on Agency*, 302–3 ; 1 *Mass.* 208 ; 9 *Mass.* 490 ; 1 *Cranch*, 345 ; 1 *Curtis*, 423.

*2d.*—Public agents acting in good faith upon facts known to both contracting parties, or of which each had equal means of knowledge, do not render themselves liable by transcending their authority through ignorance of its limits.   Nothing but fraud or misrepresentation, or an intent to bind themselves, clearly and unmistakably expressed, will render them person-

ally liable.   10 *Conn.* 329 ;   22 *Conn.* 379 ;  *Parsons' Mercantile Law, page* 147, *note* 7 ; 12 *Wend.* 179.

H. C. Lowell, & Co., and Batchelder & Buckham, Counsel for Appellants.

Davis & Tanner, and Cole & Case, Counsel for Respondents.

*By the Court.*—Emmett, C. J.   This case turns mainly upon the question, whether the Court below erred in holding that parol evidence might be received to show that the Defendants executed the note on which the action is brought in their official capacity, as the Trustees of School District No. 10, in Rice county, and not as individuals.   That the note was given not for their own debt, but the debt of the district ; that it was the intention of the parties to bind the district only—and that it was so understood by the Plaintiff at the time, and the note received by him as the note of the district.

The decision of the Courts of the various States upon the questions here involved, have been so conflicting and discordant, that authorities are not wanting to sustain either side of the question.   We are not surprised therefore, at the degree of confidence with which counsel have maintained their respective views.

The jury having found for the Defendants, we are to presume that the facts involved are as stated in the answer, and that therefore the note in controversy was in fact made under the circumstances, for the purposes, with the intent and upon the consideration therein alleged.   If then the Defendants intended to charge the district and not themselves, and the Plaintiff's intention also, was to obtain not the security of the Defendants individually, but the security of the district, it becomes the duty of the Court to carry out these intentions of the parties, if it can be done without violating a positive rule of law—for it is observable that notwithstanding the various and apparently contradictory decisions cited, the intention of the parties is recognized in every one of them as affording the true rule for interpreting the contract.   If the intention of the parties to this contract, as ascertained by the jury, is not inconsistent

with, or *may be* distinctly derived from a fair and rational interpretation of the words actually used, it will be taken as the meaning of the language used in the note.   Let us apply this test to the note in controversy, which is in the following terms:

"$1,146 66.   One year from date, we as Trustees of School District No. 10, in Rice county, and Territory of Minnesota, promise to pay John Sanborn or bearer, the sum of one thousand, one hundred and forty-six and 66-100 dollars, with interest at the rate of four per cent. per month until paid, for value received.   Dated Cannon City, Rice county, this 14th day of October, 1857.           Signed,

WILLIAM NEAL,<br>
WILLIAM B. SANBORN,<br>
JOHN BAILOR."

This language, if it does not show conclusively that the makers did not intend to promise in their individual capacity, at least renders it doubtful as to the nature of their promise ; and in such a case it appears to us that the doubt could best be solved by ascertaining the actual intention from the surrounding circumstances, the debt for which the note was given, the object sought to be attained by the arrangement, the declarations of the parties at the time in the presence of each other, and the disposition made of the money for which the note was given.

This was the course adopted by the Court below, and the evidence submitted was abundantly sufficient to justify the verdict.   It was shown that the Defendants were Trustees of the school district named.   The district had contracted debts for which the Trustees were anxious to provide.   These debts had been contracted before the Defendants went into office. Part was due to the Plaintiff, who was Clerk of the Board, and had been a director when the debts were contracted.   It was determined by the new board to borrow money to pay these debts on the security of the property belonging to the district. Applicaton was made to a Mr. Tripp, but he declined the security offered.   It was then arranged that the Plaintiff should himself borrow the money of Tripp on his own account, and accept the security which Tripp had declined.   The money was obtained pursuant to this arrangement, and the Defendants

signed the note in question, which, together with a mortgage on the property of the district to secure the same, was drawn up for the Defendants to execute at the instigation of the Plaintiff. When the several papers were ready for signature, the Defendants expressly stated in the presence and hearing of the Plaintiff that they did not intend making themselves individually liable for the payment of the note, but signed the same with the express understanding that they were promising in their official capacity only ; and the only question that then arose, was, not whether they should give their note as individuals, but whether (they having doubts about their right to bind the district by such proceedings) they might not be held individually responsible in law, notwithstanding they were acting in their official capacity merely, if it should eventually be determined that they were not authorized by law to make the arrangement on behalf of the district. These doubts however were dissipated by the legal opinion of the person whom the Plaintiff had employed to draw up the papers, and the money was obtained from Tripp and remained in the hands of the Plaintiff, who paid it out upon the debts of the district at his own discretion, without any portion of it ever passing to the hands of the Trustees. Under such a state of facts, the injustice of holding the Defendants liable in their individual capacity is manifest.

The Defendants however expressly say, in the body of the note, that they promise *as Trustees* of the district. Could they have used language more explicit ? Is it at all inconsistent with the intention alleged and proved ? Would it have made this intention any more apparent, had the Defendants added to their signatures the words " Trustees," or " as Trustees" of the district ? The Plaintiff's counsel virtually admitted by the argument, that had these words been appended to their signatures, the intention of the Defendants to be held in their official capacity only would have been manifest, even although the note itself was silent on the subject. But we do not think it would have so plainly indicated this intention as the language actually used in the body of the note.

To write out at length the legal effect of such a signature would be but to repeat the very language of the note itself,

and as the primary object, in all cases, is to ascertain what the parties really intended to declare by the language used, it should make no material difference whether this intention appears in the signature or the body of the instrument.

We do not think that the defence set up in this case, is. at all inconsistent with a rational interpretation of the terms of the note. As before remarked, it is at least doubtful in what capacity the Defendants promised, and where the interpretation is doubtful, the intention of the parties furnishes the only sure criterion.

Another position assumed by the Plaintiff, is that the Defendants had no authority to bind the district by such a contract, and having failed to render their principal liable on the note, they are themselves obliged to pay it.

There is abundant authority for a general proposition of this sort, but there is also an admitted exception, in favor of public agents, acting within the scope of their general powers.

It is not thought necessary to decide or discuss whether the Defendants were authorized to make this note on behalf of the district, nor whether the district has not, since the making thereof, so far ratified the act of the Trustees as to become liable to the Plaintiff in any event. We are satisfied that Trustees of school districts are public agents, within the meaning of the exception to the rule above referred to. 15 *Pick.* 35; 18 *John.* 124; 3 *Conn.* 564; 10 *Conn.* 338; 14 *Conn.* 248; 21 *id.* 627; 22 *id.* 379; 1 *Cranch*, 345. When public agents, in good faith, contract with parties having full knowledge of the extent of their authority, or who have equal means of knowledge with themselves, they do not become individually liable, unless the intent to incur a personal responsbility is clearly expressed, although it should be found that through ignorance of the law they may have exceeded their authority. In the whole list of cases cited to this point there is not a reason given for this doctrine, which does not apply with full force to Trustees of school districts and all other officers acting on behalf of the public, whether they act for the public at large, or that portion only embraced in a particular district. In this as in all other cases, the intention of the parties governs, and when a person, known to be a public officer, contracts with reference to the

public matters committed to his charge, he is presumed to act in his official capacity only, although the contract may not in terms allude to the character in which he acts, unless the officer by unmistakable language assumes a personal liability, or is guilty of fraud or misrepresentation. Being a public agent with his powers and duties prescribed by law, the extent of his powers are presumed to be as well known to all with whom he contracts as to himself. When therefore there is no want of good faith, a party contracts with such an officer with his eyes open, and has no one to blame if it should afterwards appear that the officer had not the authority which it was supposed he had. Were the rule otherwise, few persons of responsibility would be found willing to serve the public in that large class of offices, which requires a sacrifice of time and perhaps money, but affords neither honor nor profit to the incumbent. Where one acts as the agent of a private person the rule is different. There the authority is known only to the agent and his principal. He is therefore, with reason, held personally responsible, if he fails to bind his principal, because he is bound to know the extent of his authority, while the party with whom he contracts, is not presumed to know anything concerning it.

It is believed that the decision of these points disposes of the various questions made on the argument. The rulings of the court below, and the charge to the jury were substantially according to the views here expressed. The questions however have not been without their embarrassments, for in the language of the opinion in *Hewitt vs. Wheeler*, and another, 22 *Conn.* 257. "The books are full of cases upon this refined subject, and are burdened and overburdened with elaborate learning, not unfrequently more nice than wise, and show such embarrassing conflict of judicial opinion that one in search of the law is well nigh tempted to discard the whole that is written and follow the dictates of his own understanding."

Judgment affirmed.

*Justice Atwater dissents from the foregoing opinion.*