### New York & Charleston Steam-Ship Co. *v.* Harbison.

*(Circuit Court, D. Connecticut. May 29, 1883.)*

1. **Public Agent—Liability—Evidence.**

   A public agent who does not interpose his own credit is not liable on a contract executed by him on behalf of the state, even in cases where he might have been liable had he represented a private party; and where it is sought to charge him with a personal responsibility, the facts and circumstances ought to be such as to show clearly that both parties acted upon the assumption that a personal liability was intended.

2. **Same—Knowledge of Want of Authority.**

   Nor is he liable personally upon a contract made by him ostensibly for his principal, when he had no authority to make the contract, if his want of authority was known to the other party; and where his authority depends upon statute, all who contract with him are conclusively presumed to know its extent and limitations.

3. **Same—Acting as Agent of Other Parties Also.**

   But where a public officer executes a contract ostensibly in behalf of the state, and it is known both as matter of law and fact that he had no authority to enter into such a contract in behalf of the state, if, at the time of the execution of the contract, he was also the representative of and acting for a party of excursionists, and had a fund upon which he could rely for the payment of their expenses, and this was known to the other contracting party, he will be considered the real principal, and cannot escape liability merely because he assumed to contract as a public agent.

4. **Same—Charging Real Principal—Evidence.**

   In order to charge the real principal it is always competent, in whatever form a parol written contract is executed by an agent, to ascertain by evidence *dehors* the instrument who is the principal; whether it purports to be the contract of an agent, or is made in the name of the agent as principal.

5. **Same—Presumptions—Intention.**

   It is always presumed that persons intend effectually to do that which they contract, and when there is a conflict of circumstances the parties are pre-

sumed to adopt the construction most favorable to the performance of their engagements. Therefore, when the only way of enforcing a contract entered into by an agent, public or private, is by making him liable, his liability will be assumed provided it does not appear that it was intended in the transaction that he should not be liable.

6. SAME—CASE.

As the facts and circumstances of this case show that the defendant was the real principal who contracted with the complainant, that effect can be given to the charter-party only by treating it as his personal contract, and that there was no election on the part of the libelant to absolve him from liability, he must be held liable for the payment of the stipulated sum, with interest and costs.

In Admiralty.

*Charles C. Leeds* and *Charles R. Ingersoll,* for libelant.

*Joseph L. Barbour* and *Lynde Harrison,* for defendant.

WALLACE, J.   The libelant has appealed from a decree of the district court dismissing the libel.   The libel was filed to recover of the defendant the sum of $3,000 and interest, due upon a charter-party entered into between the libelant and the defendant, as quartermaster general of the state of Connecticut, for the hire of the libelants' steamer.

The following facts are found:

An act of the general assembly of the state of Connecticut, passed in 1881, authorized the quartermaster general of the state to provide transportation for a regiment of the National Guard, to represent the state at the centennial celebration of the battle of Yorktown, and appropriated $3,000 for that purpose.   The act also directed the quartermaster general to provide for the transportation and expenses of the governor and his staff in attending the celebration.

Thereafter, the proper authorities of the state made arrangements to have the state represented at Yorktown.   Upon consultation among the state officials and officers and men of the militia, it was concluded to visit Charleston, South Carolina, in connection with the celebration at Yorktown, and in order to provide for the extra expense of the excursion beyond the sum appropriated, the officers and men of the military organizations agreed to contribute a further sum of between $7,000 and $8,000.   A committee of arrangements was appointed to consider the ways and means.   Col. Barbour, as the representative of this committee, consulted with the quartermaster general.   The latter thought he would be justified in expending from $1,500 to $2,000, under that provision of the act of the general assembly which authorized him to provide for the expenses of the governor and staff, in addition to the $3,000 specifically appropriated for the expenses of the National Guard. The quartermaster general favored the excursion.   Thereafter, he and Col. Barbour took measures to negotiate at New York city the chartering of a steamer of libelant to convey the excursionists.   The negotiations were con-

cluded by Col. Barbour. He fully informed Mr. Quintard, the president of the libelant, of the situation, and the latter understood that the state had appropriated $3,000 for a representation at Yorktown, and that the balance necessary for the trip would be raised by subscription. A charter-party was agreed upon, at the sum of $6,000 for the trip from New Haven or New London to Yorktown, thence to Charleston and return. When the question arose as to who should sign the charter-party on behalf of the excursionists, Col. Barbour offered to sign it personally, or to procure the quartermaster general of the state to sign it. Mr. Quintard preferred to have it signed by the quartermaster general. Accordingly, the charter-party in suit was drawn up and forwarded to the defendant. It named the libelant as party of the first part, and "Brig. Gen. Alexander Harbison, quartermaster general, representing the state of Connecticut," as party of the second part. It was returned by the defendant to libelant signed "State of Connecticut, by Alexander Harbison, Quartermaster General." By its conditions the party of the second part was to pay $3,000 on signing, and $3,000 at the expiration of the voyage. The first $3,000 was paid by the defendant. The second $3,000 was not paid, and is due to the libelant, with interest.

The excursionists found the trip by steamer to Charleston disagreeable, and the officers in command turned over the steamer at that port to the owners, and brought home the expedition by railroad, the defendant paying the expenses of transportation. The defendant received, in addition to the appropriation of $3,000 by the act of the general assembly, $2,000 from the funds of the state for the expenses of the governor and his staff, and $4,875 from moneys paid by the officers and men, making in all $9,875. He paid out $3,000, the down payment on the charter-party, and the balance he paid out for the expenses of the trip.

The case turns upon the application of the principles of the law of agency. Several general propositions bearing upon the facts are relied upon for the defendant, and are well established. A public officer who does not interpose his own credit is not liable on a contract executed by him on behalf of the state, even in cases where he might have been liable had he represented a private individual; but where it is sought to charge him with a personal responsibility, the facts and circumstances ought to be such as to show clearly that both parties acted upon the assumption that a personal liability was intended. *Gill* v. *Brown*, 12 Johns. 385; *King* v. *Butler*, 15 Johns. 281; *Murray* v. *Kennedy*, 15 La. Ann. 385; *Parks* v. *Ross*, 11 How. 362; *Sanborn* v. *Neal*, 4 Minn. 126, (Gil. 83.) Nor is he personally liable upon a contract made by him ostensibly for his principal, when he had no authority to make the contract if his want of authority was known to the other party. *Newman* v. *Sylvester*, 42 Ind. 106; *Murray* v. *Carothers*, 1 Metc. (Ky.) 71; *Curtis* v. *U. S.* 2 Nott & H. 144;

*Baltimore* v. *Reynolds*, 20 Md. 1; *State* v. *Hastings*, 10 Wis. 518; *Hull* v. *County of Marshall*, 12 Iowa, 142.    If his authority depends upon statute, all who contract with him are conclusively presumed to know its extent and limitations.    *Perry* v. *Hyde*, 10 Conn. 329; *Smout* v. *Ilberry*, 10 Mees. & W. 1; *Murray* v. *Carothers*, 1 Metc. 71; *Mc-Curdy* v. *Rogers*, 21 Wis. 199; *Ogden* v. *Raymond*, 22 Conn. 384; Story, Ag. § 307; Whart. Ag. §§ 513, 531, 532.

While these general rules are applicable here, they are not decisive. The defendant was a public officer, and executed a contract ostensibly in behalf of the state of Connecticut.    It was known, both as matter of law and matter of fact, to both parties that he had no authority to enter into such a contract in behalf of the state.    Without more, it would be decided unhesitatingly that he could not be held personally. He was authorized by the act of the general assembly to transport and maintain, for the purposes of the celebration at Yorktown, the body of persons who were selected to represent the state, and to expend $3,000, and such further sum as might be necessary, for the expenses of the governor and his staff, but he had no authority, as quartermaster general of the state, to pledge the responsibility of the state for the purposes of an excursion to Charleston.    As his authority was conferred by a public law, the libelant, equally with the defendant, was chargeable with knowledge of his want of authority to make the charter-party in suit.

But, at the time the charter-party was entered into, the defendant sustained other relations towards the transaction than those existing by virtue of his official character.    He was the representative of a party of excursionists, and had a fund upon which he could rely for the payment of their expenses, and this was known to the president of the libelant.    As is stated by the learned district judge, "he hired the vessel, not because he was acting in that regard for the state, but because he was acting in behalf of a party of excursionists."    If this is correct he was the real principal, because there was no other real principal.    A body of persons who convened, as Chief Justice GIBSON expresses it, "at an ephemeral meeting for a particular occasion," could not be the principal.    *Eichbaum* v. *Irons*, 6 Watts. & S. 67.

In order to charge the real principal it is always competent, in whatever form a parol written contract is executed by an agent, to ascertain by evidence *dehors* the instrument who is the principal; whether it purports to be the contract of an agent, or is made in the name of the agent as principal.    *Higgins* v. *Senior*, 8 Mees. & W. 834; *Trueman* v. *Loder*, 11 Adol. & E. 594; *Dykers* v. *Townsend*, 24

N. Y. 61; *Coleman* v. *First Nat. Bank of Elmira*, 53 N. Y. 393; *Ford* v. *Williams*, 21 How. 289; *Huntington* v. *Knox*, 7 Cush. 371; *Eastern R. Co.* v. *Benedict*, 5 Gray, 566; *Hubbert* v. *Borden*, 6 Whart. 91; *Browning* v. *Provincial Ins. Co.* L. R. 5 P. C. 263; *Calder* v. *Dobell*, L. R. 6 C. P. 486; *Story*, Ag. §§ 148, 160; *Briggs* v.'*Partridge*, 64 N. Y. 357. The real principal may be held, although the other party knew that the person who executed as principal was in fact the agent of another. In *Byington* v. *Simpson*, 15 Reporter, 439, the supreme judicial court of Massachusetts state:

"We are of opinion that the plaintiffs' knowledge does not make their case any weaker than it would have been without such knowledge. We cannot reopen the rule that a party not mentioned in a simple contract in writing may be charged as a principal upon oral evidence, even when the writing gives no signification of an intent to bind any other person than the signer. That rule is as well settled as any part of the law of agency."

If the defendant was the real principal he cannot escape liability merely because he assumed to contract as an agent for another. The case, therefore, resolves itself into the question whether the libelant intended, notwithstanding, to rely upon the responsibility of some other party and absolve the defendant. The learned district judge was of the opinion that Mr. Quintard did not intend to rely upon the personal liability of the defendant, but although he knew that the state could not be held upon the contract, and that the defendant was only acting in behalf of a party of excursionists, preferred that the contract should be in the name of the state, and elected to discharge the defendant from liability. But does it follow that by taking the contract in the form in which it was expressed and executed he intended to absolve the defendant from personal liability? He intended, undoubtedly, to have a contract to which there should be an obligated party of the second part. This must be assumed from the fact that he required a formal contract to be executed. "It is always presumed that persons intend effectually to do that which they contract, and when there is a conflict of constructions the parties are presumed to adopt the construction most favorable to the preformance of their engagements. Therefore, when the only way of enforcing a contract entered into by an agent is by making him liable, his liability will be assumed, provided it does not appear that it was intended in the transaction that he should not be liable." Whart. Ag. § 523. This principle has been extended to contracts made by public officers when the contracts made by them in their official character were not obligatory upon their principals.

The case of *Furnivall* v. *Coombes*, 5 Man. & G. 736, is an illustration. There church-wardens and overseers of the poor entered into a covenant as such officers providing that it should be obligatory upon them officially, and upon their successors in office, but not on themselves personally. It was held that inasmuch as they had not the legal capacity to bind the corporate body by such a covenant, the contract must be presumed to have been a personal contract; and they were held to be personally liable. In that case, as in the present, both parties were bound to know the extent of the authority of the agent. The doctrine is stated by an author of very high authority as follows: "When the alleged principal could not have authorized the contract, then it is plain from the beginning that the contract can have no operation at all unless it binds the professed agent. It is construed, accordingly, *ut res magis valeat quam pereat*, and he is held to have contracted in person. Accordingly, the proper course is for the other contracting party to sue the agent on the contract itself, and he need not resort to the doctrine of implied warranty." Pollock, Princ. Cont. 234, 235.

In *Kelner* v. *Baxter*, L. R. 2 C. P. 174, a contract was made by the defendants in writing "on behalf of the Gravesend Royal Alexandra Hotel Company," and was signed in that way. The company was a projected company not then organized, and both parties knowing the fact that there was no principal in existence capable of being bound by the contract, it was held that defendants should be presumed to have contracted personally.

It seems difficult to maintain that a party who has a right to treat another as a principal, and hold him responsible as such, manifests an election to absolve him from liability by accepting the obligation of a third party which is known to be destitute of validity. This proposition must be maintained, or the libelant is entitled to recover. The defendant was the real principal, as between the libelant and the excursionists, because there is no pretense that the libelant relied upon the credit of the excursionists, and the defendant assumed to control a fund to meet their engagements. Both the libelant and the defendant contemplated that there should be a formal obligation upon which the libelant could rely for its protection. The obligation entered into was one which both parties knew was inoperative if it was to be construed as the contract of the state. Unless they intended to regard it as the personal contract of the defendant, it was a futile and nugatory form. Neither upon legal presumption nor in

ference of tact does it seem reasonable that either party intended that exclusive liability should rest upon the state.

It is not to be overlooked that in the body of the charter-party the state is not made the party of the second part, but the party named is Brig. Gen. Alexander Harbison, representing the state of Connecticut. As he was the real principal in the hiring of the vessel, there is no difficulty in treating his official designation as mere words of description. Reading the description in the body of the charter-party and in the signature as conflicting, and applying the rule adverted· to, which requires a construction of the instrument that will give efficacy to the engagements of the parties, even though it will result in charging a party as` principal who has described himself as acting only in a representative capacity, this contract should be deemed the contract of the defendant individually.

In view of all the facts, the conclusion is reached that the defendant was the real principal who contracted with the complainant; that effect can be given to the charter-party only by treating it as the contract of the defendant personally; and that there was no election on the part of the libelant to absolve him from liability.

The decree of the district court is reversed, and a decree ordered for the libelant for $3,000, with interest from October 28, 1881, with costs in the district court and upon this appeal.

---

In the leading case of *Smout* v. *Ilbery*,(a) decided in the year 1842, where the action was for meat furnished to a married woman by the plaintiff, who had been in the habit of supplying the defendant's husband, and who continued to supply the wife after her husband's departure abroad, where he died, the question for decision was whether the wife was liable for the meat furnished after the husband's death, but before information of his death had been received; and it was held that she was not liable. The opinion of the court was delivered by ALDERSON, B., who said: "The point, how far an agent is primarily liable, who, having in fact no authority, professes to bind his principal, has on various occasions been discussed. There is no doubt that in the case of a fraudulent misrepresentation of his authority with an intention to deceive, the agent would be personally responsible. But independently of this, which is perfectly free from doubt, there seems to be still two other classes of cases in which an agent who, without actual authority, makes a contract in the name of his principal, is personally liable, even where no proof of such fraudulent intention can be given: *First*, where he has no authority and knows it, but nevertheless makes the contract as having such authority. In that case, on the plainest principles of justice, he is liable; for he induces the other party to enter into the contract on what amounts to a misrepresenta-

(a) 10 M. & W. 1.

tion of a fact peculiarly within his own knowledge, and it is but just that he who does so should be considered as holding himself out as one having competent authority to contract, and as guarantying the consequences arising from any want of such authority. But there is a third class in which the courts have held that where a party making the contract as agent *bona fide* believes that such authority is vested in him, but has in fact no such authority, he is still primarily liable. In these cases, it is true, the agent is not actuated by any fraudulent motive, nor has he made any statement which he knows to be untrue; but still his liability depends on the same principles as before. It is a wrong differing only in degree, but not in essence, from the former case, to state as true what the individual making such statement does not know to be true, even though he does not know it to be false, but believes, without sufficient grounds, that the statements will ultimately turn out to be correct. But if that wrong produces injury to a third person, who is wholly ignorant of the grounds on which such belief of the supposed agent is founded, and who has relied on the correctness of his assertion, it is equally just that he who makes such assertion should be personally liable for its consequences. On examination of the authorities we are satisfied that all the cases in which the agent has been held personally responsible will be found to arrange themselves under one or other of these three classes. In all of them it will be found that he has either been guilty of some fraud, has made some statement which he knows to be false, or has stated as true what he did not know to be true, omitting, at the same time, to give such information to the other contracting party as would enable him, equally with himself, to judge as to the authority under which he proposed to act. * * * If, then, the true principle derivable from the cases is that there must be some wrong or omission of right on the part of the agent, in order to make him personally liable on a contract made in the name of his principal, it will follow that the agent is not responsible in such a case as the present. And to this conclusion we have come."

The law of this case has been doubted by Mr. Parsons, in his work on Contracts,(b) but, so far as we are aware, its authority has not been elsewhere questioned, and it has met the approval of other eminent text writers.(c)

Another class of cases in which the agent is personally liable is where he enters into the contract in his own name, or voluntarily incurs a personal liability, either express or implied.(d)

In the principal case the charter-party purported to be entered into between the libelant, of the first part, and Brig. Gen. Alexander Harbison, quartermaster general, representing the state of Connecticut, of the second part, and was signed, "New York & Charleston Steam-ship Co.; G. W. Quintard, Pres.," and "State of Connecticut, by Alexander Harbison, Quartermaster General." The state is not in the body of the instrument made a party to the contract. It does not appear from the case whether the instrument was sealed or not; but assuming, as was probably the case, that it was not under seal, "in order to be

---

(b) Vol. 1, p. 67, note.
(c) See Story, Ag. § 264, note; Pollock, Cont. ‡236; 2 Smith, Lead. Cas. (7th Am. Ed.) ‡367;

Evans, Ag. *300. See, also, Big. Lead. Cas. Torts, 21,22.
(d) See Evans, Ag. *304; Story, Ag. § 269, and cases cited.

free from any chance of incurring personal liability, the agent should not only in signing the contract have used words importing agency, but he should have shown in the body of the instrument that he was not a contracting party."(e) Had the defendant in this case, however, been duly authorized to make the contract in question, he probably would not have been concluded by the form of the contract into which he entered; for where a contract is entered into or a deed executed in behalf of the government by a duly-authorized public agent, and the fact so appears, it is the contract of the government and not of the agent, notwithstanding the agent may be described as one of the parties, and may have affixed his own name and seal.(f) Nevertheless, if such an officer chooses to contract personally, he will be personally bound.(g)

There is another class of cases where a person purporting to act as agent is generally held to be personally liable, namely, where he is in reality the principal, or where there is no responsible principal.(h) The cases where he is not thus bound are cases where the contract is or may be treated as a nullity on account of its inherent infirmity or defective mode of execution, or where it is well known to both of the contracting parties that there exists no authority in the agent to bind other persons for whom he is acting, or that there is no other responsible principal; and yet the other contracting party may be content to deal with the agent, not upon his personal credit or personal responsibility, but in perfect faith and confidence that such contracting party will be repaid by the persons who feel the same interest in the subject-matter of the contract, even though there may be no legal obligation in the case.(i) In such cases the inquiry to be made is: To whom was the credit knowingly given, according to the understanding of both parties? He to whom the credit was knowingly and exclusively given is the proper person who incurs liability, whether he be the principal or the agent.(j)

Where there is in reality no principal at the time of making the contract, the pretended agent is of course liable.(k) In the case of *Eichbaum* v. *Irons*,(l) cited in the principal case, it was held that the members of a committee appointed by a public political meeting to provide a free dinner for the party were personally liable. In *Blakely* v. *Bennecke*(m) the defendant, who signed an instrument as captain of a military company, was held personally liable on the ground that there was no responsible principal.(n)

In the principal case there would seem to be no doubt that the defendant acted for an irresponsible principal, and the controlling question in the case was: "To whom was the credit knowingly given, according to the understanding of both parties?" We do not understand that the learned judges who successively decided the case differed upon the law of the case, but only upon this

(e) Evans, Ag. *207; Lennard v. Robinson, 5 E. & B. 125; Deslandes v. Gregory, 29 L. J. Q. B. 93.

(f) Sheets v. Selden, 2 Wall. 177; Stinchfield v. Little, 1 Greenl. 231; City of Providence v. Miller, 11 R. I. 272; Hodgson v. Dexter, 1 Cranch, 335; Walker v. Swartwout, 12 Johns. 444; State v. Mc-Cauley, 15 Cal. 456; Freeman v. Otis, 9 Mass. 272.

(g) Sheffield v. Watson, 3 Cai. 99; Gill v. Brown, 12 Johns. 385; Horsley v. Bell, 1 Bro. C. C. 101, note; City of Providence v. Miller, supra.

(h) Story, Ag. § 280 et seq.; 2 Kent, Comm. 630.

(i) Story, Ag. § 287, and cases cited.

(j) Story, Ag. § 283.

(k) Kelner v. Baxter, L. R. 2 C. P. 174.

(l) 6 W. & S. 67.

(m) 59 Mo 193.

(n) See, also, generally, Cruse v. Jones, 3 Lea, (Tenn.) 66; Devoss v. Gray, 22 Ohio St. 159; Evans, Ag. *28-31 and notes; Story, Ag. § 289 and notes.

question of fact. Upon this question, in the absence of the record, and without the argument of counsel, it would be presumptuous for us to express an opinion; and it may only be added that, as the case appears to us, it is no impeachment of the judgment of either of the learned judges that he differed from the other upon the question at issue. The cases are both interesting, and, in point of law, both instructive and valuable additions to the legal literature upon the questions involved. M. D. EWELL.

*Union College of Law, Chicago, June 13*, 1883.