(12 Misc. Rep. 160.)

### OLIFIERS v. BELMONT et al.

(Common Pleas of New York City and County, Special Term. April, 1895.)

OFFICE AND OFFICER—PERSONAL LIABILITY—CONTRACTS.

    Members of the committee appointed under Laws 1892, c. 331, to celebrate the four hundredth anniversary of the discovery of America, do not render themselves personally liable by making, on behalf of the committee, a contract which is not binding on the committee because such members exceeded their powers.

Action by Bartolemy J. Olifiers against Perry Belmont and others. Defendants demur to the complaint. Sustained.

Leavitt, Wood & Keith (John Brooks Leavitt, of counsel), for plaintiff.

Bowers & Sands (Charles N. Harris, of counsel), for defendant Belmont.

Chandler, Maxwell & Philip (Harry Van Ness Philip, of counsel), for defendant Chandler.

GIEGERICH, J.   The complaint alleges:   That, in and by chapter 331 of the Laws of 1892, the mayor of the city of New York was authorized and directed to appoint, within 10 days after the said act became a law, a committee of 100 citizens of that city to conduct, manage, and direct the celebration therein of the four hundredth anniversary of the discovery of America.   That said mayor duly appointed said committee.   That said committee of 100 appointed an executive committee of 25 members, which, subject to the rules and regulations of said committee of 100, had full power to act in its place and stead, and to which was delegated the power to enter into contracts for the expenditure of money necessary to the carrying out of the provisions of this act, and said executive committee was authorized to appoint all subcommittees it might deem necessary.   That at a meeting of the said executive committee held on the 1st day of June, 1892, one C. G. F. Wahle, Jr., was duly elected its secretary, and that a subcommittee was appointed, to be known as the "Art Committee," consisting of the defendant Perry Belmont, Robert J. Hoguet, and J. Armstrong Chandler, together with Messrs. D. F. Appleton, Albert S. Bickmore, Morris K. Jessup, Daniel G. Thompson, and L. P. di Cesnola.   That on or about the 24th day of August, 1892, the defendants in this action got together, and, in conjunction with a number of persons, not members of said art committee, and in the absence of the other members of the last-mentioned committee, they, said defendants, assumed to act as the said art committee, and as if they formed a quorum thereof, and resolved "to order 400,000 lampions from Olifiers."   That the plaintiff, prior to such meeting, had furnished to said committee, at its request, an estimate for the manufacture and delivery of such lampions, fitted with hangers and chains, at a cost of $80 per 1,000, and agreed that he would take back unbroken glasses at the rate of $10 per 1,000. That after the adoption of said resolution Secretary Wahle wrote the following letter to the plaintiff:

"August 26, 1892.

"B. J. Olifiers, Esq., 85 Orient Ave., Brooklyn, N. Y.—Dear Sir: Replying to your favor of the 22d inst., I desire to say that at a meeting of the art committee last night held it was resolved to request you to make 400,000 of the lampions, fitted with hangers and chains, at $80 a thousand, on condition that you will take back the unbroken glasses at $10 a thousand. I do not want you to come here and tell me that it will be impossible to do this, for you must do it.   I wish you would let me know when you will be able to deliver the first 200,000.

"Very truly yours,        Chas. G. F. Wahle, Jr., Secretary."

The complaint further alleges that the plaintiff, supposing that said resolutions had been duly passed at a due and proper meeting of the said art committee, and relying upon the same as an acceptance of his estimate so furnished to said committee, and accepting the said order thus emanating from said committee as an order in due and proper form on behalf of the said committee of 100 for said 400,000 lampions, began at once the manufacture of said lampions, entered into contracts for the glasses, tallow, wick, and other material to make the same, and was proceeding with such manufacture,

when, on or about the 31st day of August, 1892, he was requested to stop his work by the following letter from Mr. Wahle:

"August 30th, 1892.

"B. J. Olifiers, Esq., 85 Orient avenue, Brooklyn, N. Y.—Dear Sir: Please stop at once your work on the lampions ordered by the committee. You will hear further from me in two or three days.

"Very truly yours,          Chas. G. F. Wahle, Jr., Secretary."

The complaint further alleged that on about the 2d day of September, 1892, said Wahle notified the plaintiff that there was a mistake, and that he should furnish 40,000 instead of 400,000 lampions, as appears by the following letter:

"Sept. 1st, 1892.  .

"Mr. B. J. Olifiers, 85 Orient avenue, Greenpoint—Dear Sir: The order of the lampions should read 40,000, and not 400,000. Please go ahead with this order, and when the same is completed and approved you will receive a voucher for the same.

"Very truly yours,          Chas. G. F. Wahle, Jr., Secretary."

The complaint further alleges that the plaintiff at once took steps to lessen, so far as he could, the damages resulting from the mistake; that he obtained a release, as to 200,000 of the glasses, of a contract he had entered into for the whole 400,000, but, as to the manufacture of the first 200,000, it had proceeded so far that he was obliged to complete the same, and plaintiff did complete the same, the said secretary promising that the committee would help plaintiff to sell them; that thereafter the said executive committee did accept from the plaintiff 40,000 of said lampions, and reduced his damage to that extent; that by reason of the action of the defendants, as aforesaid, plaintiff sustained large damages, as shown by a bill of particulars annexed to the complaint, which contains a statement of the items by which plaintiff succeeded in lessening his damages, and that the amount of the plaintiff's damages at the present time is the sum of $13,054.35, no part of which has been paid. Plaintiff demands judgment against the defendants for $12,703.96, with interest from October 1, 1892.

The defendant Belmont demurred to the complaint upon the following grounds:  .

"(1) That there is a defect of parties defendant, in that D. F. Appleton, Albert S. Bickmore, Morris K. Jessup, Daniel G. Thompson, and L. T. di Cesnola, the other members of said art committee mentioned in the complaint, and Charles G. F. Wahle, are not made defendants.

"(2) That the complaint does not state facts sufficient to constitute a cause of action.

"(3) That several causes of action have been improperly united,—one being upon a contract of sale, a second in contract upon an implied warranty, a third in tort for fraud, and a fourth in tort for negligence of a public officer."

The defendant Chandler also demurred on grounds the following:

"(1) That there is a defect of parties defendant, in that Messrs. D. F. Appleton, Albert S. Bickmore, Morris K. Jessup, Daniel G. Thompson, and L. P. di Cesnola and C. G. F. Wahle are not made defendants herein.

"(2) That several causes of action have been improperly united,—the first being a claim on contract of sale; and the second a claim on contract for breach of an implied warranty; and the third a claim in tort for fraud; and the fourth a claim in tort for negligence.

"(3) That the complaint does not state facts sufficient to constitute a cause of action."

 . The plaintiff seeks to charge the defendants upon the theory that one who assumes to act for a principal without authority, and draws another into a contract upon the assumption of such agency, is liable to an action in favor of the party injured. Dung v. Parker, 52 N. Y. 494. But as was said by the court in Hall v. Lauderdale, 46 N. Y. 70, 75:

"The rule that the agent is liable when he acts without authority is founded upon the supposition that there has been some wrong or omission on his part, either in misrepresenting or in affirming or concealing the authority under which he assumes to act."

In that case the question was the authority possessed by a board of supervisors, and the court held that "the boundaries of their power were known as well to the plaintiff as to the defendant."

One who deals with a public agent is charged with knowledge of the law conferring his authority. Mayor, etc., of Baltimore v. Reynolds, 20 Md. 1; Clark v. Des Moines, 19 Iowa, 199; Whiteside v. U. S., 93 U. S. 247; Mechem, Pub. Off. § 809, note 2, and citations. In the present case the powers of the committee could have been ascertained by the plaintiff by a reference to the public statute (chapter 331, Laws 1892), from which he would have learned that "the power to make contracts involving the expenditure of money" could be delegated by the committee of 100 only to the executive committee.

The rule applicable to such cases is stated by Judge Dillon, in his work on Municipal Corporations (volume 1, at page 264, note), to be as follows:

"When the officers of a public or municipal corporation act officially, and under an innocent mistake of the law, in which the other contracting party equally participated, with equal opportunities of knowledge, neither party at the time looking to personal liability, the officers are not in such case personally liable, nor is the corporation liable."

Which statement is supported by a citation of numerous authorities.

In Story on Agency (7th Ed.) at section 307a, note 1, p. 380, the learned author says:

"It has always seemed to us that the result of all the cases upon this point would not involve a public officer in any personal responsibility where he was understood to be acting in his official capacity, and not intending to assume any personal responsibility, and all the facts in regard to the extent of his authority were made known to the party with whom he contracted at the time of the contract, or where the authority was matter of public record, and personally known to the other party. In such cases the promisee must take the risk of the promisor being able to bind his principal."

In Sanborn v. Neal, 4 Minn. 126, 139 (Gil. 83), Emmett, C. J., in speaking for the court, said:

"When public agents, in good faith, contract with parties having full knowledge of the extent of their authority, or who have equal means of knowledge with themselves, they do not become individually liable, unless the intent to incur a personal responsibility is clearly expressed, although it should be found that through ignorance of the law they may have exceeded their authority. * * * In this as in other cases the intention of the parties governs, and, when a person known to be a public officer contracts with reference to the public matters committed to his charge, he is presumed to act in his official capacity only, although the contract may not in terms allude to the character in which he acts, unless the officer by unmistakable language as-

sumes a personal liability, or is guilty of fraud or misrepresentation. Being a public agent, with his powers and duties prescribed by law, the extent of his powers is presumed to be as well known to all with whom he contracts as to himself. When, therefore, there is no want of good faith, a party contracts with such an officer with his eyes open, and has no one to blame if it should afterwards appear that the officer had not the authority which it was supposed he had."

The foregoing extract is quoted by Mr. Mechem in his treatise on the Law of Public Offices and Officers, at section 809, and he cites numerous authorities in support of the statements therein contained. To the same effect as the case last above cited are the cases of McCurdy v. Rogers, 21 Wis. 197, 91 Am. Dig. 468; Steamship Co. v. Harbison, 16 Fed. 688; and those cited under a note to 91 Am. Dec. at page 471. In Newman v. Sylvester, 42 Ind. 106, 113, Osborne C. J., in speaking for the court, said:

"If his authority to act is defined by public statute, all who contract with him will be presumed to know the extent of his authority, and cannot allege their ignorance as a ground for charging him with acting in excess of such authority, unless he knowingly mislead the other party."

It follows, therefore, that the defendants cannot be charged personally simply because they failed to bind their principal, as no intention to interpose their personal responsibility can be presumed from the fact of such failure. Neither does the complaint aver such an intention, or any facts which would warrant an inference thereof, nor is any misrepresentation or bad faith alleged. The conclusion thus reached upon the authorities is equally consonant with reason and public policy. It would be difficult to secure competent men to serve the public in many important capacities, should it be held that they did so at the peril of their private fortunes in case of any mistake as to the scope of their authority. The defendants gratuitously rendered public service of an onerous nature, and no hardship is apparent in the requirement that one dealing with them, with a view to private gain, should assume the risk attendant upon his failure to inform himself as to the extent of the powers conferred upon them by public statute. These views dispense with the necessity of considering the objections of nonjoinder of defendants and misjoinder of causes of action, and it follows, therefore, that the demurrers should be sustained, with costs, with leave to the plaintiff to amend within 20 days upon payment of costs.