BUTLER and others VS. MITCHELL, impleaded &c.

The trustees of the Fox and Wisconsin Improvement Company, appointed by the governor under chap. 112 of the laws of 1856, were to act, to a very great extent, for the security of the state, and the preservation and advancement of the public interest in the improvement to which that act relates, and are not liable *personally* for the services and disbursements of attorneys at law employed by them to prosecute actions in their names as such trustees.

The act under which they were appointed being a public act, attorneys employed by them in such actions were bound to know the extent of their authority, and that under the 9th section of said act, such services and disbursements would become a debt of the company.

Upon the facts disclosed in this case, the motion of the appellant to set aside the personal judgment which had been rendered against him by default, and for leave to put in an answer, should have been granted, if an affidavit of merits had been filed.

Upon applications of that kind, an affidavit of merits must be filed. The order of the court below, denying the application made by the appellant, cannot therefore be reversed, but is so far modified as to deny the application without prejudice to a new motion.

APPEAL from the Circuit Court for *Milwaukee* County. This was an action against *Alexander Mitchell, Charles Butler* and *Alexander Spaulding*, to recover for professional ser-

vices, which were shown by a schedule attached to the complaint, to have been rendered in suits brought in the name of the defendants "as Trustees of the Fox and Wisconsin Improvement Company."

The summons was served on *Mr. Mitchell* April 9th, 1861; on *Charles Butler* on the 15th, and on *Mr. Spaulding* the 16th of the same month. Judgment was taken against the defendants, by default, on the 3d of June following, for $1233 .32. On the 2d of July, the appellant, *Mitchell*, procured from the judge of the court an order to show cause why the judgment should not be opened as to him, and he be allowed to put in an answer, which, with his affidavit, was attached to the order. The answer, which was verified, denied that the defendant had ever retained the plaintiffs in the matter set forth in the complaint, or that the plaintiffs had ever performed for him the services therein mentioned, or that the services were reasonably worth the amount charged in the complaint. The affidavit, which was made July 2d, 1861, stated that said *Mitchell* and his co-defendants were trustees appointed by the governor of the state, under an act of the legislature approved October 3d, 1856; that until the affiant was served with the summons and complaint in said action, he had no knowledge of the plaintiffs' having rendered the services for which the action was brought, and that he has since been informed, that said services were for matters pertaining to said trust; that when he received a copy of said summons, he was about starting for New York, where his co-trustees resided, intending, as he was entirely ignorant of said matters, to leave them in the hands of his co-trustees; that he afterwards informed them that he had been served with process in said action, and supposing that he could in no event be held personally liable, he paid no further attention to the matter; that on the 1st of July, the sheriff called on him with an execution, and that he then ascertained that a personal judgment had been rendered against the defendants in said action by default; that he never retained the plaintiffs in the matters for which said suit was brought, and that to the best of his knowledge and belief, no resolution was ever passed by said trustees, directing the commencement of

the suits in which the alleged services were rendered, or directing the retainer of any counsel therein; and that he never authorized his co-trustees or any other person to retain, in his behalf, any counsel, or to institute any legal proceedings whatever.—On the hearing of the order to show cause, several affidavits were read on the part of the plaintiffs, in one of which it was stated, that *Mr. Buttrick*, one of the plaintiffs, met *Mr. Mitchell* in the city of New York on the 3d of June, 1861, and was informed by him that he left Milwaukee for that city about the 30th or 31st of May, which was about thirty days after his time for answering in said action had expired; and that on the 3d day of June, the plaintiffs placed in the post office at Milwaukee a letter post paid, addressed to *Mr. Mitchell*, informing him that judgment had that day been rendered in said action, by default, for the plaintiffs' claim. The affidavit stated that the affiant was informed, a few days afterwards, by an employee of said *Mitchell*, that said letter had been received, but that said *Mitchell* was absent from home, and affiant was informed by said employee, about the 17th of June, that said *Mitchell* had returned, but that he had been probably too busy to attend to the matter; that execution on the judgment was issued on the 22d of June, and affiant was informed on the 28th of that month, by the deputy sheriff, that he had that day presented it to said *Mitchell*, who said that he was too busy, owing to the late riot, to attend to it then; and was afterward informed by said deputy, that he had presented it again to said *Mitchell* on the 1st of July. It was admitted on the hearing, that the counsel who appeared for *Mr. Mitchell* was not retained until the day before the order to show cause was made. The county court refused to set aside the judgment, and *Mitchell* appealed.

*Brown & Ogden*, for appellant:

By the act of the legislature under which the appellant and his co-trustees were appointed, they became a *quasi* corporation, with the right of suing and being sued, so far as necessary for the purposes of their trust. Kyd on Corp., 9, 10, 12, 29, 31, 52, 62, 63; Grant on Corp., 30; Angell & Ames on Corp., 19, 21, 22; 2 Johns. Ch., 325; 8 Johns.,

January Term, 1862.

BUTLER et al.
v.
MITCHELL.

January Term, 422; 18 id., 418, 125; 1 Cow., 260; 5 id., 309; 13 Mass.,
    1862.
_____ 192; 2 Wend., 109; 3 Serg. & Rawle, 117; 2 Kent's Com.,
BUTLER et al. 279, 295, 311; 10 Barn. & Cress., 349.    The expenses of ac-
    v.
MITCHELL.    tions to reduce the trust property to possession are charge-
able to the trustees and their successors, and cannot be en-
forced against the appellant personally. 1 Cow., 532; 12
Johns., 388, 446; 18 id., 125; 1 Mass., 208.   As a public
officer, the appellant is not personally liable. Chitty on Con.,
251.   As to the official character of the trustees, counsel said:
The whole beneficial interest in the lands granted by con-
gress to the state for the purpose of improving the naviga-
tion of the Fox and Wisconsin rivers, (except as to certain
reserved rights of the state,) belonged to the canal company,
and the trustees represented the state, first, in being the me-
dium through which the canal company might give title;
and secondly, in guarding against misappropriation of the
funds to the injury of the state.   They have no charge of
the improvement; they cannot levy tolls nor sell the lands,
save on the *requisition of the company;* they have no control
of the proceeds of the sales of the lands, one fourth of which
they are directed to pay, on the requisition of the company,
for interest on loans, or for other expenditures which the ex-
igencies of the company may require, and the three-fourths
they are to apply to the indebtedness of the state and the
bonds of the company.

*Butler, Buttrick & Cottrill, pro se,* to the point that the trus-
tees are personally liable on their contracts, cited Chitty on
Con., 238, 242, 246, 253, 254; 1 Parsons on Con., 102, 105–6;
Dunlap's Paley on Agency, 374–5; Ambler, 770; 5 Barn.
& Ald., 34; 8 id., 89; 5 Man. & Gr., 736; *Brook vs. Gest,*
cited in 3 Bing., 481; 1 Brown's Ch. Cas., 101; 7 Bing., 110,
704; 2 Brod. & Bing., 459; 6 Mass., 58; 6 Wend., 649; 9
Johns., 334; 15 id., 281.   The only exception to the rule is
in the case of government agents.   Chitty on Con., 251–2;
1 Parsons on Con., 105, and cases cited; Dunlap's Paley on
Agency, 376–7.   The action of a majority of trustees in a
case like this, binds the minority, even to the extent of mak-
ing them personally liable. 1 Bos. & Pul., 236; 3 Durn. &
East, 592; 6 Johns., 39; 7 Cow., 530; 10 Wis., 276; Am-

bler, 770.   The indemnity of the trustees under a deed of trust does not give the persons employed by them a right as creditors against the trust fund.   8 Vesey, 8.   Solicitors or others employed by trustees are confined to their personal remedy against the trustees.   Hill on Trustees, 567 *et seq.;* 8 Ves., 8; 3 Sandf., 531; 2 Sim. & Stu., 237.   2. The appellant is concluded by his own *laches.*   He did not leave Milwaukee for New York till about thirty days after the expiration of the time to answer, and doubtless received, on the 17th of June, the letter informing him that judgment was rendered in the action, and on the 28th of that month the execution was served on him; and yet he did not retain counsel till the 1st of July.   6 Bosworth, 679, 690.   3. The appellant did not comply with the rule which requires an affidavit of merits before a judgment by default can be opened.   11 Wis., 146, 258.

*By the Court,* PAINE, J.   We think the answer presented   May 15. by the appellant set up a good defense to the action.   The respondents rely upon a class of authorities which hold that trustees are personally liable to agents and attorneys whom they employ.   But they concede in their brief, and refer to authorities to that effect, that government agents are an exception to the rule.   And we think this case falls within the exception.   The trustees appointed under chapter 112, Gen. Laws of 1856, were evidently intended to act, to a very great extent, for the security of the state, and the preservation and advancement of the public interest in the improvement to which that act relates.   It is true their action would also enure to the benefit of the Improvement Company, but only so far as was consistent with the accomplishment of those other objects which were the primary reasons for their appointment.   For this reason we think they were not personally liable, and section 9 of the act is in harmony with this conclusion, as it expressly provides that the compensation of the trustees, and of all officers and agents of said trustees, &c., should be at the cost and charge of said company.

The respondents claim an application of the doctrine that agents are held liable where they do not disclose their prin-

January Term,
1862.

Butler et al.
v.
Mitchell.

cipal.   But we think the plaintiffs' complaint fully shows that the principal was disclosed in this case.   The bill of particulars attached as a schedule to the complaint, shows that the claim was for services as attorneys in suits brought in the name of the defendants " as Trustees of the Fox and Wisconsin Improvement Company."   The plaintiffs, therefore, knew that the defendants were acting as trustees, and they being public agents, and the act under which they were appointed, a public act, the plaintiffs were bound to take notice of the extent of their authority, and that by virtue of section 9, their claim became a debt against the company.

If an affidavit of merits had been filed, we think the appellant should have been let in to defend, for reasons similar to those in *Johnson vs. Eldred*, 13 Wis., 482.   But we have several times decided that in applications of this sort an affidavit of merits should be filed.   11 Wis., 146; id., 258. And though the reasons for requiring it are not as apparent where the defense is of the nature presented in this case, as it would be in many others, yet the practice must be uniform, and for this reason we cannot reverse the order appealed from.   It does not appear that this point was relied on in the court below, or that the decision was based upon that ground.   But as we decide the case upon it, we have concluded that we may so far modify the order appealed from, as to deny the appellant's motion without prejudice to a new motion, with costs against the appellant in this court.

Note.—*Mr. Ryan* (on a motion for rehearing, which was overruled) presented the following summary of the provisions of the act under which the trustees were appointed: The 1st section provides for the work to be executed by the corporation, and the time and manner of the execution.   It also provides for the discharge of outstanding unpaid evidences of indebtedness on the part of the state on account of the work.   It also gives a limited and negative supervision of the plan of the work to the governor, to ensure the objects of the grant by congress; but does not give any supervision to the governor or other state officers of the financial or general business of the corporation.   The 2nd section, "to enable said company to perform the duties required in the preceding section," grants the land over again to the corporation, upon new terms and conditions therein specified.   These are, that the corporation shall make a deed of trust to three trustees, of the unsold lands, and of the work, and of the franchises and property of the corporation, upon certain trusts: 1st.   To secure the application of the grant, &c. to the work and to the payment of all unpaid evidences of indebtedness of the state in the premises; 2d.   For the payment of bonds of the corporation; 3d.   To

secure the improvement of the Wisconsin river by the grant lying upon it. The 3d section authorizes the corporation to issue bonds to be secured by the deed of trust, and provides for the appropriation of part of the avails of the land to the payment of interest and expenses, at the request of the corporation. It then provides that in case of default by the corporation, the trustees shall sell the lands and apply the proceeds according to the priorities established by the act. The 8th section provides that the trustees shall be appointed by the governor, *with the approval of the corporation*, and may be removed by the governor with the *like approval*. The 9th section provides that the compensation of the trustees and of all agents of the trustees and corporation, and all expenses under the trust and that act, shall be at the cost of the corporation, without charge to the state. The tenth section provides, that upon the completion of the work and the execution of the trust, the trustees shall reconvey to the corporation.

In support of the motion for a rehearing, *Mr. Ryan* urged, among other things, that all the duties of the trustees under this act, were for the corporation, as much as those of the trustees in any railroad mortgage, and for the creditors of the corporation, including the state; that theirs could not be said to be a public employment, but private duties, to be paid for by the corporation ; that this view was strongly confirmed by the fact that the state had conveyed the work and the grant to the corporation, and that the title of the trustees, in accordance with the terms of the act itself, proceeded not from the state but from the company ; that the state dictated the terms of the trust, but the company was the constituent of the trustees, and the state a mere *cestui que trust* ; that the mode of appointment, which was by the governor *by and with the advice and consent of the board of directors of the company*, seemed to be conclusive that the legislature did not regard these trustees as public officers; that if it were conceded that they were to act for the benefit of the corporation as well as for that of the state, when acting for the former they bore the character of private trustees; that the true meaning of section 9 was, that the expenses of the trustees, &c. should be paid out of the fund, and not be a charge to the state; that the trustees—who took everything—and not the company, had the power to raise a fund to defray the expenses of the work and of the execution of the trust ; that they therefore were the persons charged with the knowledge of the fact whether a sufficient fund was provided for the payment of any service required, and they must be held to have acted in bad faith if they required a service for the payment of which they had not an adeqate fund; and that the language of the decision in *Horsley vs. Bell*, Ambler, 769, supported by many other authorities, was strictly applicable to them.—REP.