G. KLAY, Appellant, v. THE BANK OF DALLAS CENTER AND CLYDE E. BRENTON, Cashier, Appellees.

**Principal and Agent:** AUTHORITY OF AGENT: REPRESENTATIONS: EVIDENCE. In an action for damages for failure to furnish money to loan on real estate, the evidence is considered and it is held that defendants were acting simply as the agents of another, and therefore not personally liable for the failure of the principal to approve applications and furnish money, and

further, that there were no false representations as to defendants' authority to bind their principal such as to render them personally liable.

*Appeal from Dallas District Court.*—HON. A. W. WILKIN-. SON, Judge.

SATURDAY, JANUARY 30, 1904.

THE opinion states the case.—*Affirmed.*

*G. Klay,* appellant, *pro se.*

*White & Clarke* for appellees.

WEAVER, J.—The petition sets out plaintiff's alleged cause of action in three counts. By the first count it is alleged that defendants, acting as the agents of one Dr. Fahrney, entered into a written contract with A. W. ᵗLohr to furnish money on loans negotiated by Lohr; that Lohr, acting upon such promise, procured a large number of applications for loans, but defendants refused to complete the transactions or to procure or furnish the money for said applicants, and in fact had no authority to act as agents for said Fahrney, whereby said Lohr lost the commissions he would have received on said loans, and was otherwise damaged in his business. The second count pleads substantially the same state of facts, except he here alleges that defendants entered into said contract on their own account, and agreed for themselves to furnish the money upon applications procured by said Lohr, but failed so to do. The third count alleges that defendants represented themselves to be the agents of Dr. Fahrney, and undertook on his behalf to supply money upon loans negotiated by Lohr; that Lohr, believing and relying upon said representations, secured numerous applications for loans, upon which he was to receive commission; that said representations were false, in that said defendants were not authorized to contract on behalf of Fahrney, and that Fahrney refused to ratify or carry out said agreement or furnish the money to complete said loans. In each count it is alleged that the contract sued upon is em-

braced in certain written correspondence passing between Lohr and the defendant Brenton, and that the claim for damages for the breach of such contract has been assigned to plaintiff. The letters written by Brenton are as follows:

"Bank of Dallas Center, Iowa, 10-11, 1902. A. W. Lohr, Esq., Orange City, Iowa—Dear Sir: We are acting as the agent for Dr. Fahrney's loans and from what he writes us he does not desire to get too many agents—he does not know how many loans he could handle. Then again he has a relative here who passes on all loans. However if you can get me some large applications, $5000.00 or over we will be pleased to submit them at 1 per cent commission and expenses. We are making a nice line of loans in Buena Vista and could possibly do you some good. Yours truly, Clyde E. Brenton."

"Bank of Dallas Center, Dallas Center, Iowa, 10-14, 1901. A. W. Lohr, Esq., Orange City, Iowa—Dear Sir. Yours of the 10th inst. at hand. Would say will make loans at 4 1-2 per cent. and you to pay $10.00 per thousand and expenses, but this is to be loans of $5000.00 or over and we would also want two or three loans at one time as we have to send examiner from here. We are making a number of loans and where papers are in shape can close loans promptly. We inclose herewith blank applications. Yours truly, Clyde E. Brenton, C."

"Bank of Dallas Center, Dallas Center, Iowa, 10-16, 1901. A. W. Lohr, Esq., Orange City, Iowa—Dear Sir: Yours of the 15th at hand and I fear that my client could not handle the amount of business you have and would suggest that you get us three or four nice applications of not less than $4000.00 which I think he would handle and I will take them at 1 per cent commission and $10, but of course borrower must furnish abstract and put mortgage on record, all five years optional payments. The rule is same as insurance company not to exceed one-half the value of land. If you will get the two applications of which you speak will send examiner, but I fear he would not waive personal ex-

amination of each piece. I will refer you to my brother-in-law at Alton, Mr. S. Lincoln. Yours truly, Clyde E. Brenton, C."

"Bank of Dallas Center, Dallas Center, Iowa, 10-31, 1901. A. W. Lohr, Esq., Orange City, Iowa: Yours of the 30th at hand, yes we deal directly with Dr. Fahrney and not with Mr. Canterbury. We wrote Dr. Fahrney that unless we could deal directly we could not do business. Since that time he has been doing business direct with most satisfactory results, however, they will not advance money until loan is made and all papers sent to them. This at times takes lots of money. We have our own attorneys appointed as examiner of title and a brother-in-law of Dr. Fahrney living here examines property. It is our plan to have three or four applications in a locality then send an examiner to look over all at once; we already have acceptances for Jan. 1. We would be pleased to submit the $20,000.00 applications for you and feel sure that we can do as well for you as anyone and will handle them as long as they furnish funds and they have lately assured us that they can take care of a large line. Clyde E. Brenton, C."

"Bank of Dallas Center, Dallas Center, Iowa, 10—16, 1901. A. W. Lohr, Esq., Orange City, Iowa—Dear Sir: Yours of the 15th inst. at hand and I fear that my client could not handle the amount of business you have and would suggest that you get us three or four nice applications of not less than $4,000.00 which I think he would handle and I will take them at 1 per cent commission and $10 but of course borrower must furnish abstract and put mortgage of record all five year loans the rule the same as insurance company not to exceed one-half the value of land. If you will get the two applications of which you speak will send examiner but I fear he would not waive personal examination of each piece. I will refer you to my brother-in-law Mr. S. Lincoln at Alton, Iowa. Yours truly, Clyde E. Brenton, C."

Lohr's replies to these letters are not set out in the record, but are said in the petition to be in "substance an ac-

ceptance" of the "offer" contained in the foregoing communications. To this petition defendants filed a demurrer upon grounds which may be briefly stated as follows: (1) The correspondence does not in fact constitute any contract between defendants and Lohr; (2) it shows defendants were acting as agents only, and assumed no personal liability; and (3) it shows affirmatively that there were no false representations made or deception practiced by said defendants. The demurrer to each count was sustained, and, plaintiff refusing farther to plead, judgment was entered against him for costs.

In our judgment the demurrer was properly sustained. Reading the letters, and giving the language, as we must, its usual and ordinary signification, it seems too clear to require argument that defendants at no stage of the negotiation made any false representation, or in any manner led plaintiff's assignor to believe that they were acting otherwise than as agents whose powers were limited to the procurement of loans which should be subject to the approval and acceptance of their principal. Their promise is neither more nor less than an undertaking to receive applications sent in by Lohr, and to "submit" them to Dr. Fahrney. We are not authorized to segregate one letter from the rest of the correspondence, as does appellant in argument, and to treat it as the agreement of defendants to personally furnish the money upon the loan applications. He has himself alleged and set out the entire series of letters as containing the contract on which he relies, and we must read them together, each in the light of the others. So reading them, there is not the least room for doubt that neither party at the time contemplated any promise or agreement on part of defendants to supply the money desired by Lohr, except as they might in turn be able to procure it from Fahrney. Taking the letters in the order of their date, the first advises Lohr that they are acting as "agents for Dr. Fahrney," and "will. be pleased to submit" to him applications for loans. The second letter states the rate of commission that defend-

ants will expect. The two letters dated October 16, 1901, are practically identical in form, and ·tell Lohr the defendants fear their "client cannot handle the amount of business you (Lohr) have," but suggest a certain line of loans they "think he would handle." The last letter assures Lohr that they deal directly with Dr. Fahrney, and not through another agent, and again say they "will be pleased to submit" to their principal the loan applications which Lohr might send in. In other words, they undertook to act as an intermediary between Lohr and Fahrney, leaving the approval of the applications and the furnishing of the money thereon entirely to the latter.

It is urged,. however, that, as the petition alleges that defendants had no authority as agents to bind their alleged principal to furnish the money, they became personally liable as if they had contracted on their own account. · The general rule of law here relied on as to personal liability of an agent upon a contract made by him without the authority of his principal will be conceded. In other words, if the agent undertakes to bind his principal, but by reason of want of authority he fails to do so, he binds himself. But in the case before us defendants did not undertake to bind Fahrney to accept Lohr's applications, but distinctly notified him of their lack of authority in that respect. What they did promise was to submit the applications to Fahrney, and, if accepted by him, to procure the money thereon for applicants. There is no allegation that they did not do precisely as they agreed in this respect. Moreover, it may be said there is no allegation of sufficient performance on part of Lohr. It is averred that when he was "ready to submit" these .applications defendants failed and refused to furnish the money. It is not alleged that he ever did in fact submit or offer ·to submit them for defendants' action. This, we think, is all which need be said concerning the first and second counts of the petition.

The third count is open to the same objections, unless the allegations therein contained of false representations by

defendants state a cause of action. The "representations" relied upon are those contained in the letters above set out, but in none of these, as we have seen, do the defendants pretend to any authority whatever in themselves to pass upon the applications or bind Dr. Fahrney to accept them. Indeed, they inform Lohr that there is a doubt whether their client will be able "to handle" this business. It is clear that both Lohr and defendants were in the business of negotiating loans for other parties; that both hoped to secure the funds for this purpose from Fahrney, and Lohr, not being able to deal with Fahrney direct, sought to reach him through defendants, and by such transactions to enable both parties to earn certain fees and commissions. This, profit as to both of them was dependent and conditioned upon the approval or acceptance of the applications of Fahrney. There is in all these allegations no element of false representations, such as in law will support a claim of damages. As there is no representation or pretense of any authority either to accept Lohr's applications or to bind Fahrney to accept them, the allegation in the petition that no such authority existed is insufficient to show any wrong on part of the defendants.

The demurrer was rightly sustained, and the judgment of the district court is AFFIRMED.