MARTIN *et al.* v. SCHUERMEYER.

No. 1428.   Opinion Filed January 16, 1912.

(121 Pac. 248.)

1.   **MUNICIPAL CORPORATIONS—De Jure Council—Employment of Attorney—Individual Liability.**   Where persons constituting the de jure council of a city of the first class, and sitting as a council, by motion elected an attorney special city counselor to bring suit to reinstate them and the other **de jure** officers into offices at that time claimed and occupied by others, and in the motion was embodied a resolution to pay the attorney $400 if he won the suit, and to assess the persons passing the resolution $200 to pay him if he lost, they were endeavoring to contract for the city, and the attorney cannot recover his fee from them individually.

2.   **SAME—Contracts of Officers—Personal Liability.**   Persons are not liable upon contracts made on behalf of a municipal corporation, where the contract shows that they did not intend to bind themselves individually, even though they were without authority to bind the corporation.

(Syllabus by Rosser, C.)

*Error from Superior Court, Muskogee County; Farrar L. Mc-Cain, Judge.*

Action by W. F. Schuermeyer against T. H. Martin, the City of Muskogee, a city of the first class of Oklahoma, Edward C. Alley, L. E. Prall, W. F. Shewey, Henry Vogel, and J. H. Klick. Judgment for plaintiff against the defendants T. H. Martin, Edward C. Alley, L. E. Prall, W. F. Shewey, Henry Vogel, and J. H. Klick, and in favor of the defendant the City of Muskogee, and defendants bring error.   Reversed and remanded.

*Butte, Boone & Lattimore,* for plaintiffs in error.

*McCrory & Eichenauer* and *J. E. Wyand,* for defendant in error.

Opinion by ROSSER, C. This was a suit by W. H. Schuermeyer against the city of Muskogee, T. H. Martin, E. C. Alley, L. E. Prall, W. F. Shewey, Henry Vogel, and J. H. Klick to recover for legal service rendered as attorney, and for expenses incurred in the cases of the state of Oklahoma *ex rel.* Attorney General v. H. M. Chestnutt, the same plaintiff against Ledbetter, and the same plaintiff against Walrond. The plaintiff testified in the case, and at the close of his testimony the defendant city of Muskogee demurred to the evidence, and the demurrer was sustained. The court then instructed the jury to find for the plaintiff against the other defendants. The jury returned a verdict accordingly, upon which judgment was entered. Plaintiff does not appeal from the judgment in favor of the city; but the defendants have appealed from the judgment against them.

There are several assignments of error; but it is only necessary to notice the assignment that the evidence is not sufficient to sustain the verdict. The only evidence in the case was the testimony of the plaintiff. The material part of his testimony is as follows:

"Q. State to the jury what the agreement was. A. At about this time, I was called upon by Mr. Kimsey, who, prior thereto, had been chief of police, in reference to whether or not the election which elected Mr. Ledbetter was legal. At the time I investigated this, there was a great deal of doubt as to whether or not the bond issue was legally made, and whether or not the city was a city of the first class. Mr. Leo Bennett, who was then, at least acting mayor, just elected, sent for me, and said that he knew that the matter ought to be settled at once, and he asked me if I would not attend a meeting, if he would call together all the members of the council and all the officials elected for the new administration, also all the old council, and officials, and I said I would meet there. They discussed the matter that afternoon, and all that discussed the proposition thought it would be favorable to the city if all would abide by one suit, so that they would be sure as to the validity of the contracts they were going into. The old council withdrew from the meeting and held a separate meeting, and there were present Mayor Martin, Recorder

Campbell, Mr. Klick, Mr. Vogel, Mr. Prall, Mr. Alley, Mr. Shewey, members of the old council, who, under their theory, were still officials.  They first asked me to go into the meeting, and then they thought that they would hold a secret meeting and asked me to withdraw, and they discussed the matter for some time, and then, after a half hour, they asked me to go in, and they asked me to bring a suit to determine who the officers were. We considered the proposition, and then the new council came back and submitted a proposition to them that if they lost they would pay me $200, and if they won and were seated they had to pay me $400; and then we sat in the room, and all were present there, and Mayor Martin and somebody—I think Mr. Klick or Mr. Shewey—suggested that a motion be made to elect me as special counselor, and the motion was put by Mr. Martin, and it was carried that I be special city counselor for that purpose, and also that I be instructed to bring this suit; and if I won $400 and expenses be paid me, and that if I lost they assess themselves $200 and expenses to pay me.  Mr. Klick then made a motion that I would be required to ask Mr. Wyand in the case, who, I had announced, was also employed by Mr. Kimsey to bring the suit for him, and ask him if it would be agreeable if he would associate himself with me, and he said it was, and I said that as far as filing the suit in the Supreme Court that Mr. Wyand would be in it with me; but I found that, instead of one case, three cases would be necessary, as there was a little difference between the chief of police and the mayor, the mayor and councilmen, and the councilmen and the other officers, so I prepared three petitions and went over to Guthrie and called upon the Attorney General, and secured permission to use his name in filing the suits in the Supreme Court, and he signed all three petitions we prepared and filed them in the Supreme Court."

He further testified that the defendants were put back in office.  On cross-examination, he stated that at the time of the agreement the defendants were not "acting as *de facto* officers of the city of Muskogee"; that Leo E. Bennett and his administration were so acting; but that the Supreme Court decided defendants were the *de jure* officers.  He also stated that Bennett and his administration were not present when he was elected special city counselor.  The test suits brought to ascertain whether the Bennett administration was legal were not brought against any one occupying an office claimed by any of the defendants.

Martin et al. v. Schuermeyer.

It is clear from the testimony that the defendants did not intend to make themselves personally liable, unless they lost their case. In that event, they were to "assess themselves $200 and expenses," and pay plaintiff. Plaintiff went to the place where the contract was made upon the request of the acting mayor, Bennett, to meet both the defendants and the *de facto* officers. His services were thought useful to the city. Both councils withdrew and talked it over. The *de facto* officers then came in and proposed that if defendants were reinstated in office they pay plaintiff $400, but that if they were not seated they would pay $200. Who was to pay the $400? Evidently the city. The *de facto* officers would have no interest in fixing a private fee to be paid by private individuals. They were evidently giving their judgment as to what the city ought to pay if defendants were seated. The defendants acted on their judgment; for a motion was made by one of the defendants, and was put by defendant Martin, to elect plaintiff special counselor, and, to again quote plaintiff, "it was carried that I be special city counselor for that purpose, and also that I be instructed to bring this suit; and if I won $400 and expenses be paid me, and that if I lost they assess themselves $200 and expenses to pay me." Defendants did not intend to pay anything if they won. They intended for the city to pay. It was only in the event they lost that they would assess themselves. The very fact that plaintiff sued the city indicates that he considered the city liable.

The law is that an officer contracting on behalf of a public corporation, and intending to so contract, is not personally liable on his contract, where he has been guilty of no fraud or misrepresentation, and where the person with whom he contracts has the same means of knowing the extent of his authority as he has, though he exceeds his authority, and for that reason does not bind the corporation. *Ogden v. Raymond,* 22 Conn. 379, 58 Am. Dec. 429; *First National Bank v. Commissioners,* 81 Minn. 95, 83 N. W. 468; *McCurdy v. Rogers,* 21 Wis. 197, 91 Am. Dec. 468; *Sanborn v. Neal,* 4 Minn. 126 (Gil. 83), 77 Am. Dec. 502; *Butler v. Mitchell,* 15 Wis. 355; *Mann v. Richardson,* 66 Ill. 481; *New York & Charleston S. S. Co. v. Harbison* (C. C.) 16

Fed. 681; *Humphrey v. Jones,* 71 Mo. 62; *Olifiers v. Belmont,* 15 Misc. Rep. 120, 36 N. Y. Supp. 813; *Henry v. Henry,* 73 Neb. 746, 103 N. W. 441. The reason for this rule is that the powers of officers of municipal corporations are prescribed by law, and the public have equal means of knowing what the law is with the officers themselves. The rule is different as to agents of private persons or corporations. People contracting with persons holding themselves out as agents of private individuals or corporations have not equal means of knowledge with the agents, and have the right to presume that their authority is what they represent it to be. Yet, even in cases of agency for private persons, if the agent explains the facts with reference to his authority, or if the other party has knowledge of the facts, the agent is not personally liable, where he has attempted to bind a principal, though he exceeds his authority. *Ogden v. Raymond,* 22 Conn. 379, 58 Am. Dec. 429; *Ware v. Morgan,* 67 Ala. 461; *Klay v. Bank,* 122 Iowa, 506, 98 N. W. 315; 31 Cyc. 1549, and cases there cited.

Now, in this case, the defendants were not holding office, and to that extent the case is different from any case cited by counsel, or found after considerable search. But the principle involved is the same. They did not intend to bind themselves, and did not misrepresent their authority. They may have believed that, if reinstated, their action would be validated. They were consulting and employing plaintiff to act as their attorney for their own benefit, it is true, but also for the benefit of the city, and the suits were not brought in the names of any of the defendants. Both *de facto* and *de jure* officials wanted the validity of certain contracts settled. Plaintiff knew as much about their power to bind the city as they did, and possibly more. Then, unless they intended to bind themselves, why should they be held? Men are not bound by contract further than they intend to be bound, unless estoppel, misrepresentation, or fraud enter into the case. In this case there is no element of either. The fact that plaintiff has rendered valuable services for nothing cannot change the law. The contract as made is all the courts can consider, and, considering that only, plaintiff cannot recover on the contract as proven.

The case should be reversed, and remanded for further proceedings, not inconsistent with this opinion.

By the Court: It is so ordered.

All the Justices concur.